PACIFIC NATIONAL INSURANCE COMPANY, Appellant,

v.

TRANSPORT INSURANCE COMPANY, Appellee.

No. 17706.

United States Court of Appeals Eighth Circuit.

Feb. 12, 1965.

Edward Brodkey, Chicago, Ill., made argument for the appellant and filed brief with Maurice Cathey, of Kirsch, Cathey & Brown, Paragould, Ark.

Richard A. Reid, of Reid & Burge, and James W. Steinsiek, Gardner & Steinsiek, Blytheville, Ark., for appellee.

Before VOGEL, MATTHES and RIDGE, Circuit Judges.

MATTHES, Circuit Judge.

Transport Insurance Company, plaintiff below, appellee here, instituted this action against Pacific National Insurance Company, one of the defendants below and appellant here, seeking to recover by way of indemnity the amount it had paid on account of a judgment obtained by one Paul Sikes against Superior Forwarding Company and Fred Russell in the Circuit Court of Greene County, Arkansas. Transport was successful in a trial before the Court, Judge Young, Transport Insurance Co. v. Manufacturers Cas. Ins. Co., 226 F.Supp. 251 (E.D.Ark.1964) and Pacific has appealed.[1]

Superior, a common carrier holding a certificate of public convenience and necessity issued by the Interstate Commerce Commission, leased trucks for use in its trucking operations. On July 19, 1957, Superior transported a large freezer unit from Corning, Arkansas to Para-

1. Hereinafter, we shall refer to Pacific National Insurance Company as Pacific or appellant; to Transport Insurance Company as Transport or appellee; to Superior Forwarding Co. as Superior, to Tommy Russell as named or as Tommy and to Fred Russell as named or as Fred.

gould, Arkansas, in a truck that had been leased from Tommy Russell. The driver of this truck, Fred Russell, had been furnished by Tommy Russell in accordance with the terms of the leasing agreement. Tommy was Fred's employer, paid Fred's wages and social security and unemployment taxes. Paul Sikes, a laborer, was working on the construction of the building to be occupied by Kroger Grocery Company, the consignee of the freezer unit. At Fred's request, Sikes was assisting in unloading the freezer and because of Fred's negligence, the freezer fell upon Sikes and caused him to sustain serious injuries.

On April 3, 1957, Manufacturers Casualty Insurance Company named as a defendant in this action, had issued to Tommy Russell, a policy of insurance which covered the truck in which the freezer had been transported. Pacific, formerly Pacific National Fire Insurance Company, also named as a defendant, succeeded to the policy liabilities of Manufacturers. Transport was the liability insurance carrier for Superior Forwarding Company.

The policy issued by Pacific to Tommy Russell contained an omnibus clause, providing in substance that with respect to insurance for bodily injury liability, the unqualified word "insured" includes the named insured and any person while using the vehicle, provided the actual use of the vehicle is by the named insured or with his permission. Under this provision Fred Russell was covered as an additional insured.

The policy issued by Transport to Superior defined "insured" as the named insured and "if a corporation, any executive officer, managing employee, director, or stockholder thereof while acting within the scope of his duties as such * * ". The trial court found that this policy did not provide coverage to Fred Russell, the truck driver, because as a servant of Superior he was not a named insured within the above quoted clause of the policy. This finding is not challenged by appellant.

Paul Sikes sued Superior, Tommy Russell and Fred Russell in the Circuit Court of Greene County, Arkansas. Pacific, Tommy's insurer, entered into a non-waiver agreement with Tommy and thereafter filed a demurrer in his behalf which was sustained. From the outset of the Sikes' litigation, Transport took the position, and so advised Pacific, that Fred Russell was an insured under Pacific's policy and Transport called upon Pacific to defend Fred. Pacific adamantly refused to do so and Transport took over the defense on behalf of Fred.

Sikes' judgment against Superior and Fred Russell was affirmed by the Supreme Court of Arkansas, Superior Forwarding Company v. Sikes, 233 Ark. 932, 349 S.W.2d 818 (1961). Transport satisfied the judgment, and then filed this suit in the United States District Court on the theory that Superior was held vicariously liable for Sikes' injuries; that Superior had the right to proceed by way of indemnity against and recover from Fred Russell, the actual tortfeasor; and that as Superior's subrogee, it is entitled to maintain this action and recover from Fred Russell's insurer.

The threshold question is whether jurisdiction exists. Appellant strenuously asserts that there was no jurisdiction in the district court, and that we must therefore vacate the judgment and remand with directions to dismiss. Jurisdiction was not challenged in the district court, in fact all parties proceeded as though the court had power to act. However, as suggested by appellant, jurisdiction may not be conferred by consent and lack of jurisdiction of the subject matter cannot be waived by the parties or ignored by the court; if jurisdiction is lacking the trial court should on its own motion decline to proceed and if the case is tried where jurisdiction is lacking, the jurisdiction of the appellate court on review is limited to correcting the error of the trial court in entertaining the action. These principles are fundamental and were recog-

nized and applied by us in the recent case of Rock Island Millwork Co. v. Hedges-Gough Lumber Co., 337 F.2d 24, 26–27 (8 Cir. 1964).

Appellant concedes that there is diversity of citizenship and that the jurisdictional amount is present, but contends that the proceeding is not a case or controversy under article III of the United States Constitution and the applicable statutes. Appellant also concedes that the parties hereto stand in the place of their respective insureds, but asserts that appellee had "no standing to sue this defendant, as it did not own a supposed claim against this party" and that "until such time as is determined the extent, if any, of Fred Russell's liability to Superior, there is no basis for any claim in behalf of Superior, or of Superior's subrogee, against defendant Pacific." In other words, appellant's theory is that inasmuch as the question whether Superior was vicariously liable to Sikes has not been litigated and finally adjudicated in an action between Superior or appellee, as its subrogee, and Fred Russell, this proceeding is premature.

In support of its position, appellant directs our attention to the tests to be applied in determining whether the action presents a controversy which a federal court has power to adjudicate—other jurisdictional requirements being present. The tests are clearly enunciated by the Supreme Court in the oft-cited case of Muskrat v. United States, 219 U.S. 346, 356, 357, 31 S.Ct. 250, 55 L.Ed. 246, 254 (1911) as follows:

> " 'The judicial article of the Constitution mentions cases and controversies. The term "controversies," if distinguishable at all from "cases," is so in that it is less comprehensive than the latter, and includes only suits of a civil nature. Chisholm v. Georgia, 2 Dall. 431, 432, 1 L.Ed. 440, 446; 1 Tucker's Bl.Com.App. 420, 421. By cases and controversies are intended the claims of litigants brought before the courts for

determination by such regular proceedings as are established by law or custom for the protection or enforcement of rights, or the prevention, redress, or punishment of wrongs. Whenever the claim of a party under the Constitution, laws, or treaties of the United States takes such a form that the judicial power is capable of acting upon it, then it has become a case. The term implies the existence of present or possible adverse parties, whose contentions are submitted to the court for adjudication.' " See also Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240–241, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

By application of the foregoing tests, we are satisfied that at the time this action was commenced, appellant and appellee stood in adverse positions to one another, and appellee's claim was a present, specific, right, ripe for determination. The following factors are significant: (1) Fred Russell was an insured under appellant's policy; Superior was insured by appellee; (2) suit had been brought by Sikes against Superior and Fred Russell; (3) appellant refused to assume the defense of Fred, and appellee in an effort to exonerate its insured from vicarious liability for the negligence of Fred, undertook the defense of the latter; (4) judgment was rendered against Superior and Fred and affirmed on appeal; (5) appellee paid the full amount of the judgment.

Thus posited, appellee as the subrogee of Superior, was entitled to maintain this action and secure an adjudication of a real and substantial controversy, to-wit, the question whether it was entitled to recover by way of indemnity, the amount it was required to pay in satisfaction of the Sikes' judgment. The argument that it was necessary to first secure a judicial determination that Superior was vicariously liable, in a proceeding directly against Fred

Russell has no appealing force.[2] If Superior was entitled to maintain such an action against Fred, we are satisfied that on this record Superior's insurer may proceed against Fred's insurer. See and compare: Pacific Employers Ins. Co. v. Hartford Acc. & Ind. Co., 228 F.2d 365 (9 Cir. 1955) cert. denied 352 U.S. 826, 77 S.Ct. 38, 1 L.Ed.2d 49 (1956); Maryland Cas. Co. v. Employers Mut. Liability Ins. Co., 208 F.2d 731 (2 Cir. 1953); Prickett v. Hawkeye Security Insurance Company, 282 F.2d 294 (10 Cir. 1960). As stated by the Court in Travelers Insurance Company v. General Casualty Company, 187 F.Supp. 234, at page 236 (E.D.Idaho 1960): "The reason for this rule is obvious. It prevents a multiplicity of suits and holds the insurer liable who by a circuity of actions would eventually be obligated to pay any judgment rendered against an employer resulting from the negligence of his employee".

We are satisfied jurisdiction exists, and accordingly shall proceed to a consideration of appellant's contentions which go to the merits of the case.

■ The substance of appellant's first contention on the merits is that error was committed by the trial court in finding and concluding that Superior's liability was vicarious in nature. As we have observed, Superior was the lessee of the truck; Fred, the driver, was Tommy's employee and was furnished by Tommy in accordance with the terms of the lease. Thus, Fred was the agent of Superior in the latter's common carrier operations, and because of this relationship the law imposed responsibility upon Superior to a third person who sustained damage as the result of Fred's tortious conduct while acting within the scope of his employment. This is a well-settled rule. See 3 Am.Jur.2d, Agency, § 267, where it is stated:

"Fundamentally, and according to both the Restatement and the American courts, there is no distinction to be drawn between the liability of a principal for the tortious act of his agent and the liability of a master for the tortious act of his servant. In both cases, the tort liability is based on the master and servant, rather than any agency, principle; the liability for the tortious act of the employee is grounded upon the maxim of 'respondeat superior' and is to be determined by considering, from a factual standpoint, the question whether the tortious act was done while the employee, whether agent or servant, was acting within the scope of his employment."

■ The crucial question here is whether both Superior and Fred were guilty of negligent conduct as contended by appellant or whether Superior was held liable solely because of Fred's negligence and under the "respondeat superior" doctrine.

Appellant argues that the proceedings in the Sikes litigation not only show that this issue was not adjudicated and determined but that the jury very likely found that the cumulative neglect of both defendants was the proximate cause of the Sikes accident. Appellant further emphasizes that in Sikes' amended complaint, he alleged that Superior was negligent in certain respects in regard to the delivery and unloading of the freezer unit; that the Court submitted to the jury the question whether Sikes was injured as a result of the negligence of Superior and Fred Russell and that there was a general verdict against both.

We are not persuaded that the foregoing circumstances are conclusive of the

---

2. If, as appellant argues, such a determination is a prerequisite to this action, we believe the answer may be found in the Sikes case. Although the state trial court and the Arkansas Supreme Court were not required to and did not in fact expressly rule the question whether Su-

perior's liability was solely vicarious, the undisputed facts together with the trial proceedings and the Supreme Court's opinion compel the legal conclusion that Sikes was injured as the result of Fred Russell's negligence and that Superior's liability was secondary or vicarious.

issue. The fact is that the evidence establishes beyond peradventure of a doubt that Sikes was injured during the unloading operation and through Fred's negligence. Indeed in the instant action, the parties stipulated that the Sikes accident "took place in connection with the unloading of the freezer". Superior was under no duty to unload freight as it was operating under a tariff which provided that it was the duty of the consignee to unload freight that was too heavy for the truck driver to handle. And this record does not establish even by inference that Superior had in fact assumed the responsibility of unloading the freezer. In holding that a submissible case was made by Sikes, the Supreme Court of Arkansas ruled that "[t]he jury could have found from the evidence that Fred Russell, acting within the scope of his authority as agent for the trucking company, obtained the services of Sikes to help unload the heavy equipment; that the equipment was in charge of and under the care of Russell until delivery was completed; * * * that Russell was negligent in the manner of unloading the equipment and that as a result of such negligence Sikes was injured". Superior Forwarding Co. v. Sikes, supra, 349 S.W.2d at p. 820.

While it is true that the Arkansas Supreme Court did not explicitly hold that Superior's liability was vicarious, that holding is implicit in the opinion, or as stated by Judge Young, "[f]rom a careful reading of the Arkansas Supreme Court opinion, the conclusion is compelling that Superior's liability was vicarious, with Fred Russell being the active tortfeasor". Transport Insurance Co. v. Manufacturers Cas. Ins. Co., supra, 226 F.Supp. at page 254.

■ Turning to the question of indemnity, and the circumstances under which it may be granted, recognized authority teaches that as against the person whose personal wrong is responsible for harm to a third person, one vicariously liable who has been compelled to respond in damages may have complete indemnity. See Harper & James, The Law of Torts, Vol. 1, § 10.2, page 723; 27 Am.Jur. Indemnity, § 18. Judge Young held that this is the law in Arkansas, 226 F.Supp. at page 253. Appellant does not take issue with this rule, but does urge that indemnity is precluded in this case because of the terms of the leasing agreement between Superior and Tommy Russell. We now give consideration to that point.

■ Paragraph 4 of the agreement provides: "Lessee [Superior] agrees to file with the Interstate Commerce Commission and with the State Regulatory Commissions having jurisdiction in the premises and to keep in full force and effect public liability, property damages and cargo insurance in such amount as may be required under and by the regulations of said commissions".

Appellant asserts that the written lease completely defined the liabilities of the parties thereto for all purposes and that such agreement released and exonerated Pacific, Tommy Russell's insurance company, from all liability. Its position is premised largely on the holding of the court in American Fidelity & Casualty Company v. Simmons, 253 F.2d 634 (4 Cir. 1958). In Simmons, as here, the lessee agreed to carry a liability insurance policy on the leased vehicle. Lessee's insurance company paid a judgment obtained by an injured party against the lessee and then sought to recover indemnity from the lessor. In affirming the lower court's judgment denying recovery, the Court of Appeals stated, 253 F.2d at p. 636:

> "The lease agreement provided that Webb [Lessee] should procure insurance to cover this liability, and the reasonable interpretation of the agreement is that it should protect against all liability arising out of the operation, not that it should protect merely the liability of Webb with the right of Webb or the insurer to recover over against Simmons the amount of any liability they might be required to pay. Without going into the question as to whether the liability of Webb,

without reference to the agreement respecting insurance, is primary or secondary, it would be unconscionable, in the light of the provision in the lease agreement, to allow Webb to recover of Simmons indemnity for the liability which Webb had agreed with Simmons to cover with insurance; and, of course, the rights of the casualty company by way of subrogation cannot be superior to the rights of Webb."

The trial court accepted the rationale of the Simmons case insofar as the rights of Superior and Tommy Russell are concerned, but reasoned that the instant lease

"does not prevent Superior or its subrogee from seeking indemnity from defendants on account of the tortious conduct of Fred Russell, their omnibus insured, for whom Superior has been held vicariously liable in the state court action. The liability of defendants in the instant case is predicated upon this theory and the lease contract in no way precludes the relief now sought by plaintiff." 226 F.Supp. at p. 257.

Like the trial court, we do not regard Simmons as standing for the proposition that Transport, Superior's insurer, may not seek and obtain indemnity from Pacific whose policy insured Fred Russell, the party whose negligence imposed liability on Superior. Stated differently, we are not inclined to stretch the meaning of the terms and conditions of the lease agreement to the point where Superior, or its subrogee is prohibited from enforcing an existing legal right against one who is not a party to the agreement.

Furthermore, appellant's lease theory must be rejected for the additional reason that the insurance provision upon which it relies had been modified by the parties and under the agreement as modified, the obligation of Superior and Tommy in regard to liability insurance was materially changed.[3] The evidence discloses without substantial dispute, that at all times during the existence of the leasing agreement, it was mutually agreed that Tommy was to procure a liability insurance policy on the leased vehicle which would cover its use, whether in behalf of Superior or otherwise.[4] Tommy complied with this agreement as evidenced by Pacific's policy under which Tommy, and any other person using the vehicle with his permission, were insured.

■ Finally, appellant contends that the court erred in failing to limit any recovery by Transport from Pacific to an amount prorated between them in proportion to the respective policy limits of the parties. We are of the view that the co-insurance, excess or pro rata provisions in appellant's policy are not applicable, and that this contention is without merit.

The judgment is affirmed.

---

3. The trial court made no specific finding or reference to the modification apparently because it was satisfied that the written agreement constituted no legal impediment to appellee's right to indemnity.

4. An officer of Superior testified: "It was my desire and intention that Mr. Tommy Russell provide a primary type of coverage because of the nature of this relationship not knowing whether the vehicles, for instance, would be legally taken out sometimes during the middle of the night, or perhaps someone might be inclined to do some unauthorized drinking and get us involved in a serious situation there of a particular accident or other serious injury and, for that reason, I felt that we should have that type of coverage for Superior. I required this of him and I required this of another similar commission or agency in a different city in the State of Arkansas.

    \*    \*    \*    \*    \*

    "Q. Did he take out insurance from 1952 to the termination of his business with you in 1960 or '59? A. Yes, sir."

    \*    \*    \*    \*    \*

    On cross-examination Tommy testified: "Q. Tommy, since 1952, through 1957, did you have an understanding with Superior that you would keep your trucks that were leased to them insured for public liability? A. Well, I am supposed to keep them insured."