**William H. VEEDER, Plaintiff,**

v.

**OMAHA TRIBE OF NEBRASKA, Defendant.**

No. C 94–4014.

United States District Court,
N.D. Iowa,
Western Division.

Oct. 3, 1994.

891

David A. O'Brien, Washington, DC, and Marchelle Roberts of O'Brien, Galvin, Moeller, Sioux City, IA, for plaintiff.

Thomas Waldman and James Baird of Kutak, Rock, Campbell, Omaha, NB, for defendant.

**ORDER RE: DEFENDANT OMAHA TRIBE'S FED.R.CIV.P. 12(b)(1) MOTION TO DISMISS**

BENNETT, District Judge.

I.   INTRODUCTION AND FACTUAL BACKGROUND ..................... 892
II.  ANALYSIS ....................................................... 893
     A. Standards For Dismissal Pursuant to Rule 12(b)(1) .................. 893
     B. Adequacy Of Veeder's Complaint On Its Face ........................ 896
        1. Supplemental Jurisdiction ...................................... 897
        2. Federal Question Jurisdiction .................................. 897
        3. Federal Corporation Jurisdiction ............................... 898
     C. The Challenge to Diversity Jurisdiction ............................ 898
     D. Comity ......................................................... 901
III. CONCLUSION ................................................... 902

This lawsuit is brought by the former attorney for a tribe of Native Americans for payment of attorney fees and expenses incurred during seventeen years of representation on behalf of the tribe in litigation to recover land in western Iowa. The tribe has moved to dismiss for want of subject matter

jurisdiction pursuant to *Fed.R.Civ.P.* 12(b)(1). The motion requires the court to determine whether it has subject matter jurisdiction to entertain this case as a diversity or federal question action, as an action against a federal corporation, or as an action supplemental to other lawsuits over which it currently has jurisdiction. Central to the court's determination of these issues is the dual nature of tribal organization permitted under the Indian Reorganization Act of 1934, 25 U.S.C. § 461 *et seq.* (IRA). The court concludes that it does not have subject matter jurisdiction to entertain this case as it is currently pleaded.

## I. INTRODUCTION AND FACTUAL BACKGROUND

On February 11, 1994, plaintiff William H. Veeder (Veeder), an attorney practicing in Washington, D.C., and claiming Virginia citizenship, brought this action against his former clients, the Omaha Tribe of Nebraska a/k/a the Omaha Indian Tribe (the Tribe). Veeder's complaint alleges that the Tribe entered into a contract and several extensions of that contract with him for legal services in litigation to secure title to land on the Iowa side of the Missouri River. The lawsuits Veeder filed on behalf of the Tribe include *United States v. Wilson,* No. C75–4024, and *Omaha Indian Tribe v. Jackson,* No. C75–4026, both of which were concluded some years ago, and *Omaha Indian Tribe v. Agricultural Industrial Investment Co.,* No. C75–4067, which is currently on appeal to the Eighth Circuit Court of Appeals on issues concerning judgments on counterclaims. These lawsuits are collectively known to the parties as "the Blackbird Bend litigation." Veeder alleges that the Tribe has breached the contract for legal representation by failing to pay most of the fees and expenses due him under the contract for pursuing this litigation.[1] Veeder seeks compensatory and punitive damages. In lieu of answering, the Tribe filed the present motion to dismiss for want of subject matter jurisdiction on March 30, 1994.

The present lawsuit is not Veeder's first attempt to recover attorney fees for pursuing the Blackbird Bend litigation. Veeder asserts that he did not become concerned about payment of his fee until the Spring of 1993 when he heard rumors that the newly-elected Tribal Council would settle the litigation and dismiss him. On July 16, 1993, Veeder filed a motion for payment of costs, expenses, and legal fees in the Blackbird Bend litigation, then a notice of attorney's judgment lien. On October 25, 1993, the Honorable Warren K. Urbom denied the motion for payment of costs, expenses, and legal fees, but set a hearing on the notice of attorney's judgment lien. On December 6, 1993, the court in the Blackbird Bend litigation ruled that Veeder was not entitled to an attorney's lien under the provisions of the applicable statute.

Veeder next filed a motion to intervene in the Blackbird Bend litigation on December 16, 1993. Judge Urbom ruled that Veeder's petition of intervention must be denied because Veeder had no interest in the land involved in the litigation, and there was no showing that disposition of the Blackbird Bend litigation would "as a practical matter impair or impede Mr. Veeder's ability to protect his interest" in his fee, such that Veeder could intervene as of right. *Omaha Indian Tribe v. Agricultural & Industrial Investment Co.,* No. C75–4067, C75–4024, C75–4026, slip op. at 4–5 (N.D.Iowa filed Jan. 31, 1994) (Hon. Judge Warren K. Urbom). The court held further that Veeder's petition did not involve common questions of law and fact with the underlying litigation and no statute granted a conditional right to intervene, such that permissive intervention was appropriate. *Id.* Judge Urbom also stated that he knew of no reason that Veeder could not bring a separate lawsuit for his fee. *Id.* This separate lawsuit followed.

In his complaint, Veeder alleges that the Tribe is

a federally recognized Indian Tribe organized under the Indian Reorganization Act of 1934 (25 U.S.C. § 476) and is a federal

---

1. Veeder has submitted documents to the court in support of his resistance to the motion to dismiss stating that he was due fees in excess of $500,000, and expenses in excess of $100,000, and that he has received from the Tribe $20,000 and a contribution from a church group of $10,-000, leaving a balance due well in excess of $500,000.

corporation chartered under the Act of June 18, 1934 (48 Stat. 984 as amended). Complaint, para. II. Veeder's complaint does not state against which of these entities, the constitutionally organized tribe or the federal corporation, he has brought this lawsuit or with which entity he alleges he has a contract. It does assert jurisdiction on several bases:

[T]he Court has jurisdiction of this action based upon diversity of citizenship pursuant to 28 U.S.C. § 1332 because this action is between citizens of two different states (Nebraska and Virginia) and the amount in controversy exceeds the sum of $50,000.00 exclusive of interest and costs. The Court also has federal question jurisdiction based upon the subject matter of this complaint and 28 U.S.C. § 1331. The Court further has ancillary jurisdiction of this matter based on the nature of this complaint as it relates to lawsuits previously filed and/or still pending in this Court identified as Omaha Indian Tribe, Plaintiff, v. Agricultural and Industrial Investment Co., et al., Defendants, No. C75–4067, No. C75–4024, and No. C75–4026. Finally, the Court has jurisdiction pursuant to the Omaha Tribe of Nebraska being organized and existing as a corporation under federal law and 28 U.S.C. § 1349.

Complaint, para. III. The Tribe challenges each and every one of these grounds for subject matter jurisdiction. The Tribe also asserts that as a sovereign predating the United States Constitution, it is immune from suit. Finally, the Tribe argues that even if this court has subject matter jurisdiction, it should defer to tribal remedies which Veeder has failed to exhaust.

The Tribe submitted its motion and brief on March 30, 1994. Veeder resisted the motion on April 12, 1994, and submitted a brief in support of his resistance on June 13, 1994, followed by an affidavit of Mr. Veeder on June 14, 1994. The Tribe was granted

leave to file a reply brief and did so on July 7, 1994. The court held oral arguments on the Tribe's motion to dismiss on September 27, 1994.[2] Veeder was represented at the hearing by counsel David A. O'Brien, of Washington, D.C., who appeared by telephone, and Marchelle Roberts of O'Brien, Galvin, Moeller, in Sioux City, Iowa. The Tribe was represented at the hearing by counsel Thomas Waldman and James Baird of Kutak, Rock, Campbell, in Omaha, Nebraska. Neither party requested an evidentiary hearing, and no evidence was presented. This matter is now fully submitted.

## II. ANALYSIS

### A. Standards For Dismissal Pursuant to Rule 12(b)(1)[3]

■ *Fed.R.Civ.P.* 12(b)(1) provides that a party may raise the defense of "lack of jurisdiction over the subject matter" in a motion before answering the complaint filed in any action. Parties may not confer subject matter jurisdiction upon the federal courts by stipulation or agreement, and lack of subject matter jurisdiction cannot be waived by the parties or ignored by the court. *Pacific Nat'l Ins. Co. v. Transport Ins. Co.*, 341 F.2d 514, 516 (8th Cir.), *cert. denied*, 381 U.S. 912, 85 S.Ct. 1536, 14 L.Ed.2d 434 (1965). Because jurisdiction is a threshold issue for the court, the district court has "broader power to decide its own right to hear the case than it has when the merits of the case are reached." *Bellecourt v. United States*, 994 F.2d 427, 430 (8th Cir.1993) (quoting *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir.1990), which in turn quotes *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981)).

■ For the court to dismiss for lack of subject matter jurisdiction under *Fed. R.Civ.P.* 12(b)(1), the complaint must be suc-

---

**2.** I was appointed as a district judge for the U.S. District Court for the Northern District of Iowa on August 26, 1994, and this case was transferred to me shortly thereafter.

**3.** The court would have been assisted had either party argued the standards applicable to a motion to dismiss pursuant to *Fed.R.Civ.P.* 12(b)(1).

Such a discussion would have clarified for the court and for the parties whether the Tribe was making a facial or factual attack on the pleadings in this case, and might have caused the Tribe to make a request for evidentiary hearing if the challenge was indeed intended to be factual.

cessfully challenged on its face or on the factual truthfulness of its averments. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir.1993). The court in *Titus* distinguished between the two kinds of challenges:

> In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction. *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 731–32 (11th Cir. 1982)....
>
> If the [defendant] wants to make a *factual* attack on the jurisdictional allegations of the complaint, the court may receive competent evidence such as affidavits, de-

position testimony, and the like in order to determine the factual dispute. *Land v. Dollar*, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 1011 n. 4, 91 L.Ed. 1209 (1947) [footnote omitted]. The proper course is for the defendant to request an evidentiary hearing on the issue. *Osborn [v. United States]*, 918 F.2d [724,] 730 (citing *Crawford v. United States*, 796 F.2d 924, 928 (7th Cir.1986)).

*Id.* Defendant here, the Tribe, has not requested such an evidentiary hearing, although it has submitted documents in support of its motion.[4] Veeder has responded by submitting an affidavit affirming the factual allegations in his resistance to the motion to dismiss and other exhibits.[5]

---

4. The documents the Tribe has submitted are Veeder's Motion for Leave to Intervene in the Blackbird Bend litigation, Defendant's Motion to Dismiss, Ex. A; Judge Urbom's Memorandum and Order on Motion for Leave to Intervene, denying the motion for leave to intervene, Defendant's Motion to Dismiss, Ex. B; and Judge Urbom's Memorandum of Decision on Counterclaims, Defendant's Motion to Dismiss, Ex. C. These documents appear to have been attached to demonstrate the denial of Veeder's previous attempts to obtain a judgment for fees and, on the supplemental jurisdiction question, to demonstrate that a court has previously held that there is no relationship between this lawsuit and prior lawsuits. None of these documents goes to the disputes this court considers critical to determination of the present motion to dismiss, which are whether Veeder *alleged* that he contracted with the Tribe as a corporation, and, further, whether he *did indeed* contract with the Tribe as a corporation. The Tribe appears to challenge Veeder's complaint on both of these grounds. The first appears to be a legal challenge to the adequacy of the complaint, and the second appears to be a factual challenge to the truth of allegations in the complaint.

5. In his resistance, Veeder argues that he is suing the Tribe in its dual capacity as a governmental entity and a federal corporation. Exhibit 1 to Veeder's Resistance is a copy of a Resolution of the Omaha Tribal Council wherein the Tribe is described as "a federal corporation chartered under the Act of June 18, 1934, (48 Stat. 984) as amended," and in which it is resolved that the Tribe and the Bureau of Indian Affairs "enter into an agreement, contract or grant providing the necessary funds so that legal services may be rendered to the Omaha Tribe" to carry on the Blackbird Bend litigation. This document indicates in which capacity the Tribe entered into an agreement with the Bureau, but does not indicate in what capacity it may have entered into a contract, if any, with Veeder.

Veeder has also submitted a copy of the complaint filed in the Blackbird Bend litigation in which the Tribe is described as

> a body corporate established pursuant to its Constitution and By–Laws formulated and adopted by the Omaha Indian Tribe, and approved by the Secretary of the Interior, ... all in accordance with Section 16 of the Act of June 18, 1934 (48 Stat. 987); 25 U.S.C. 476....

Plaintiff's Brief in Support of Resistance to Motion to Dismiss, Ex. 2. This document demonstrates that the Tribe brought the Blackbird Bend litigation in its constitutional capacity, but waiver of sovereignty in the Blackbird Bend litigation does not necessarily amount to waiver of sovereignty in an action against the Tribe for attorney fees. Indian tribes are "domestic dependent nations," which exercise inherent sovereign authority over their members and territories. *Oklahoma Tax Comm'n v. Potawatomi Indian Tribe*, 498 U.S. 505, 508, 111 S.Ct. 905, 909, 112 L.Ed.2d 1112 (1991) (citing *Cherokee Nation v. Georgia*, 30 U.S. (5 Pet.) 1, 17, 8 L.Ed. 25 (1831)). Suits against Indian tribes are thus barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation. *Id.* (citing *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978)). To be effective, an Indian tribe's waiver of sovereign immunity must be unequivocally expressed and may not be implied. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58–59, 98 S.Ct. 1670, 1677–78, 56 L.Ed.2d 106 (1978); *American Indian Agricultural Credit Consortium v. Standing Rock Sioux Tribe*, 780 F.2d 1374, 1378 (8th Cir. 1985). In *Potawatomi Indian Tribe*, the court held that even where a tribe had waived sovereign immunity in order to bring a direct suit for an injunction against the state Tax Commission, it had not thereby waived sovereign immunity to the Commission's counterclaims. *Potawatomi Indian Tribe*, 498 U.S. at 508, 111 S.Ct. at 909. In the present case, the court must conclude that by bringing the Blackbird Bend litigation, the

The district court has the authority to consider matters outside the pleadings on a motion challenging subject matter jurisdiction under *Fed.R.Civ.P.* 12(b)(1). *Drevlow v. Lutheran Church, Missouri Synod,* 991 F.2d 468, 470 (8th Cir.1993). If material facts are adjudicated by the court in determining its jurisdiction, the appellate court will review the findings of fact for clear error. *Id.* Where the material facts are not in dispute, the appellate court will review the court's determination that it lacks jurisdiction de novo. *Id.* If the court considers matters outside of the pleadings, however, it may not, without notice to the parties, convert a motion to dismiss for lack of subject matter jurisdiction under *Fed.R.Civ.P.* 12(b)(1) into a motion to dismiss for failure to state a claim under *Fed.R.Civ.P.* 12(b)(6), which is subject to summary judgment disposition, because to do so would not allow the parties to respond to the issue the court is weighing for summary judgment. *Layton v. United States,* 919 F.2d 1333, 1334–35 (8th Cir. 1990).[6]

In *Osborn v. United States,* 918 F.2d 724 (8th Cir.1990), the Eighth Circuit Court of Appeals presented its most exhaustive discussion of the procedures and requirements for determination of a 12(b)(1) motion to dismiss.

The district court was correct in recognizing the critical differences between Rule 12(b)(1), which governs challenges to subject matter jurisdiction, and Rule 56, which governs summary judgment. Rule 12 requires that Rule 56 standards be applied to motions to dismiss for failure to state a claim under Rule 12(b)(6) when the court considers matters outside the pleadings. [Citations omitted.] Rule 12 does not prescribe, however, summary judgment treatment for challenges under 12(b)(1) to subject matter jurisdiction where a factual record is developed. Nonetheless, some courts have held that Rule 56 governs a 12(b)(1) motion when the court looks beyond the complaint. We agree, however, with the majority of circuits that have held to the contrary. . . . [Citations omitted.]

The reason for treating a 12(b)(1) motion differently than a 12(b)(6) motion, which is governed by Rule 56 when matters outside the pleadings are considered, "is rooted in the unique nature of the jurisdictional question." *Williamson [v. Tucker],* 645 F.2d [404,] 413 [ (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981) ]. It is "elementary," the Fourth [sic] Circuit stated, that a district court has "broader power to decide its own right to hear the case than it has when the merits of the case are reached." *Id.* Jurisdictional issues, whether they involve questions of law or of fact, are for the court to decide. *Id.* Moreover, because jurisdiction is a threshold question, judicial economy demands that the issue be decided at the outset rather than deferring it until trial, as would occur with denial of a summary judgment motion.

*Osborn,* 918 F.2d at 729.

The *Osborn* court found the distinction between facial and factual attacks on the complaint under 12(b)(6) to be critical. *Id.* (citing *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir.), *cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980), and *Mortensen v. First*

Omaha Tribe has not waived sovereign immunity to Veeder's *independent action* for payment of attorney fees any more than it would have waived sovereign immunity to counterclaims in the Blackbird Bend litigation. *Id.*

6. In *Layton,* the court noted that a 12(b)(1) motion is distinguishable from a 12(b)(6) motion on the ground that the Rules expressly provide that the latter is subject to conversion into a summary judgment motion, while no such provision exists for a 12(b)(1) motion. *Layton,* 919 F.2d at 1335. However, courts have approved such a conversion of a 12(b)(1) motion when appropriate. *Id.* (citing *Less v. Lurie,* 789 F.2d 624, 625 n. 1 (8th Cir.1986)). There is, however, an exception to

the notice requirement before the court makes a conversion into a summary judgment motion articulated in *Van Leeuwen v. United States Postal Service,* 628 F.2d 1093, 1095 (8th Cir.1980), which requires that if both parties have submitted affidavits and exhibits outside the pleadings which they understand that the District Court has accepted for consideration, then the nonmoving party has notice of the court's intention to treat the motion to dismiss as one for summary judgment. *Id.* (concluding that the court could not invoke the *Van Leeuwen* exception on the basis of a unilateral submission of exhibits by the moving party).

*Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977)). The court stated that

> [i]n the first instance, the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6). The general rule is that a complaint should not be dismissed " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards.

*Id.* at 729 n. 6 (citations omitted).[7] A factual challenge to jurisdiction under 12(b)(1) is unique:

> [H]ere the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56. Because at issue in a factual motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*Id.* at 730 (quoting *Mortensen,* 549 F.2d at 891). The *Osborn* court stated that the proper course is for the defendant to request an evidentiary hearing on the issue, and, since no statute or rule prescribes the format of such a hearing, " 'any rational mode of inquiry will do.' " *Id.* (quoting *Crawford,* 796 F.2d at 929).

> Once the evidence is submitted, the district court must decide the jurisdictional issue, not simply rule that there is or is not enough evidence to have a trial on the issue. [*Crawford,* 796 F.2d at 929.] The only exception is in instances when the jurisdictional issue is "so bound up with the merits that a full trial on the merits may be necessary to resolve the issue." *Id.*

*Id.*[8]

The court concludes that most of the Tribe's challenges to subject matter jurisdiction in this case are facial. Accepting as true Veeder's factual averments, the Tribe argues that this court does not have subject matter jurisdiction over Veeder's complaint on the grounds of supplemental jurisdiction, federal question jurisdiction, or jurisdiction over a federal corporation. The court will therefore consider these bases for subject matter jurisdiction first, returning to the question of whether the Tribe has made a facial or factual challenge to diversity jurisdiction below.

### B. Adequacy Of Veeder's Complaint On Its Face

The court concludes that " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,' " *Osborn,* 918 F.2d at 729–30 n. 6, on the ground that this court has subject matter jurisdiction based on supplemental jurisdiction, federal question jurisdic-

---

**7.** The standards for dismissal under Rule 12(b)(6) were recently restated in *Carney v. Houston,* 33 F.3d 893, 894 (8th Cir.1994):

> We must construe the allegations in the complaint in the light most favorable to [plaintiff], *see [Concerned Citizens of Neb. v. United States Nuclear Reg. Comm'n,* 970 F.2d 421, 425 (8th Cir.1992)], and should not approve dismissal of his complaint for failure to state a claim unless "it appears beyond doubt that [he] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–03, 2 L.Ed.2d 80 (1957).

**8.** The procedure for disposing of a motion to dismiss for lack of subject matter jurisdiction on the basis of insufficient amount in controversy, for example, is that the sum claimed by the plaintiff controls if it is apparently made in good faith; to justify dismissal, it must appear to a legal certainty that the claim is for less than the jurisdictional amount. *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938); *Zunamon v. Brown,* 418 F.2d 883 (8th Cir.1969); *Hedberg v. State Farm Mut. Auto. Ins. Co.,* 350 F.2d 924 (8th Cir.1965). When a motion to dismiss for lack of subject matter jurisdiction brings into issue the value of the amount in controversy, the plaintiff bears the burden of establishing the jurisdictional requirement with "competent and preponderant proof." *Hedberg,* 350 F.2d at 929.

tion, or jurisdiction over a federal corporation. The court will consider each of these allegation of jurisdiction *seriatim.*

### 1. Supplemental Jurisdiction

■■■ Veeder alleges that "[t]he Court .. has ancillary jurisdiction of this matter based on the nature of this complaint as it relates to lawsuits previously filed and/or still pending in this Court identified as Omaha Indian Tribe, Plaintiff, v. Agricultural and Industrial Investment Co., et al., Defendants, No. C75–4067, No. C75–4024, and No. C75–4026." Complaint, para. III. Such an allegation of jurisdiction is founded on 28 U.S.C. § 1367, which states, in pertinent part,

§ 1367. Supplemental jurisdiction.

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, *in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction* that they form part of the same case or controversy under Article III of the United States Constitution.

(Emphasis added.) The parties have devoted a good share of their briefs to argument over whether or not Veeder's complaint is "so related" to the Blackbird Bend litigation that this court can exercise supplemental jurisdiction over the present lawsuit. The court is mystified by such an argument. By its terms, 28 U.S.C. § 1367 requires that the supplemental claim be brought in an action in which the court has original jurisdiction.[9] Veeder has not brought his present com-

plaint in any such context. Rather, he has brought an independent action and asks the court to exercise "supplemental" jurisdiction over it to obtain jurisdiction. This the court declines to do.

In *Palmer v. Hospital Authority of Randolph County,* 22 F.3d 1559 (11th Cir.1994), the Eleventh Circuit Court of Appeals came to the same conclusion as the court does here that supplemental jurisdiction may not stand alone.

Supplemental jurisdiction is, by its very nature, not original but additional; that is, it relies on the existence of some other original basis of jurisdiction. A case may not be brought in federal court on the grounds of supplemental jurisdiction alone. By definition, such jurisdiction must be attached to another basis of jurisdiction.

*Palmer,* 22 F.3d at 1565.[10] Supplemental jurisdiction provides no basis for a court to exercise jurisdiction over this independent lawsuit.

### 2. Federal Question Jurisdiction

■■■ Veeder also asserts that "[t]he Court also has federal question jurisdiction based upon the subject matter of this complaint and 28 U.S.C. § 1331." Complaint, para. III. The court concludes that no federal question jurisdiction is present here. Veeder has pleaded breach of contract as the basis for relief. In order to assert federal question jurisdiction, the court must be satisfied that the plaintiff's claim is one " 'arising under' federal law." *Nat'l Farmers Union Ins. Cos. v. Crow Tribe,* 471 U.S. 845, 850, 105 S.Ct. 2447, 2450, 85 L.Ed.2d 818 (1985). Veeder has failed to assert specifically what

---

**9.** "The task of resolving the dispute over the meaning of [the statute] begins where all such inquiries must begin: with the language of the statute itself." *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). When the language of the statute is plain, the inquiry also ends with the language of the statute, for in such instances "the sole function of the courts is to enforce [the statute] according to its terms." *Id.* (quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)). The plain meaning of a statute is decisive, "except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Ron*

*Pair,* 489 U.S. at 242, 109 S.Ct. at 1031 (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)).

**10.** In a footnote, the Eleventh Circuit Court of Appeals added the following:

The language of section 1367(a) confirms this principle. It allows supplemental jurisdiction only when there is already original jurisdiction. Supplemental jurisdiction itself cannot be the basis for exercising supplemental jurisdiction; therefore, supplemental jurisdiction is not original.

*Palmer,* 22 F.3d at 1565 n. 6.

federal law jurisdiction is based on. The court cannot exercise federal question subject matter jurisdiction simply because one of the parties is an Indian tribe and the case involves Indian property or contracts. *Tamiami Partners v. Miccosukee Tribe*, 999 F.2d 503, 507–08 (11th Cir.1993); *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir.1989); *Martinez v. Southern Ute Tribe*, 249 F.2d 915, 917 (10th Cir.1957), *cert. denied*, 356 U.S. 960, 78 S.Ct. 998, 2 L.Ed.2d 1067 (1958). The court concludes that it lacks federal question subject matter jurisdiction to hear this lawsuit.

### 3. Federal Corporation Jurisdiction

■ Veeder also alleges that "the Court has jurisdiction pursuant to the Omaha Tribe of Nebraska being organized and existing as a corporation under federal law and 28 U.S.C. § 1349." This assertion of subject matter jurisdiction is also ill-founded.[11] Title 28 U.S.C. § 1349 states that

the district courts shall *not* have jurisdiction of any civil action by or against any corporation upon the ground that it was incorporated by or under an Act of Congress, *unless* the United States is the owner of more than one-half of its capital stock.

(Emphasis added). Veeder has made no allegation that the United States owns any stock, or even that there is any stock, in the Omaha Tribe in its corporate capacity. The court does not have subject matter jurisdiction on this basis either.

### C. The Challenge to Diversity Jurisdiction

Veeder also argues that

[T]he Court has jurisdiction of this action based upon diversity of citizenship pursuant to 28 U.S.C. § 1332 because this action is between citizens of two different states (Nebraska and Virginia) and the amount in

controversy exceeds the sum of $50,000.00 exclusive of interest and costs.

Complaint, para. III. Title 28 U.S.C. § 1332 provides for diversity subject matter jurisdiction as follows:

(a) The district court shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between—

(1) citizens of different states. . . .

The Tribe argues that it is not a citizen of any state, and therefore Veeder has not alleged subject matter jurisdiction on diversity grounds. Before the court can conclude that the Tribe has made only a facial challenge to Veeder's allegation of diversity jurisdiction, the court must examine the unique dual status of the Tribe, which, as a governmental entity, is not a citizen of any state, but as a federal corporation, is a citizen of Nebraska.

■ Pursuant to the Indian Reorganization Act of 1934, 25 U.S.C. § 461 *et seq.* (IRA), an Indian Tribe may organize simultaneously in two ways: first, it may organize as a tribal governmental entity governed by a constitution and bylaws pursuant to 25 U.S.C. § 476 (a so-called Section 16 organization); second, it may incorporate as a federal corporation governed by the terms of its charter pursuant to 25 U.S.C. § 477 (a so-called Section 17 corporation).[12] The Section 16 governmental entity and Section 17 federal corporation are separate legal entities. *Gaines v. Ski Apache*, 8 F.3d 726, 729 (10th Cir.1993) (citing *Ramey Construction Co. v. Apache Tribe of Mescalero Reservation*, 673 F.2d 315, 320 (10th Cir.1982)). Although Indian tribes are not citizens of any state and cannot sue or be sued in federal court under diversity jurisdiction, *Gaines v. Ski Apache*, 8 F.3d 726, 729 (10th Cir.1993); *Standing Rock Sioux Indian Tribe v. Dorgan*, 505 F.2d 1135, 1140 (8th Cir.1974); *Oneida Indian Nation v. Oneida County*, 464 F.2d 916, 922–23 (2d Cir.1972), *rev'd on other grounds*,

11. At the hearing on this matter, counsel for Veeder candidly admitted he had located no evidentiary or caselaw support for assertion of subject matter jurisdiction on this ground.

12. Tribes may decline to accept the provisions of the IRA under 25 U.S.C. § 478. *See Kerr–McGee Corp. v. Navajo Tribe*, 471 U.S. 195, 198, 105 S.Ct. 1900, 1902, 85 L.Ed.2d 200 (1985) (Navajo not governed by IRA because tribe had declined to accept its provisions).

414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974), a tribe as a federal corporation under Section 17 of the IRA "may be considered a citizen of the state of its principal place of business for diversity jurisdictional purposes." *Gaines,* 8 F.3d at 729 (citing *Enterprise Elec. Co. v. Blackfeet Tribe of Indians,* 353 F.Supp. 991, 992 (D.Mont.1973)).[13]

The Tribe makes what is plainly a facial challenge to diversity jurisdiction when it argues that "Mr. Veeder has failed to allege that he contracted with the Omaha Tribe in its corporate capacity." Defendant's Brief in Support of Motion to Dismiss, p 4. However, the Tribe also appears to make a factual challenge to diversity jurisdiction, attacking the truth of allegations in the pleadings, when it argues that

> [a]pparently, Mr. Veeder assumes the Omaha Tribe is a citizen of Nebraska. This is an unfounded assumption, and one which is fatal to Mr. Veeder's assertion that 28 U.S.C. § 1332 provides subject matter jurisdiction over this action.

Defendant's Brief in Support of Motion to Dismiss, p. 3. However, the Tribe has made no more than this bald assertion that it is not a citizen of Nebraska and has not presented evidence, nor asked the court for an evidentiary hearing to consider any evidence, that it is not a citizen of Nebraska. The court concludes that by resting on the plaintiff's obligation to show that subject matter jurisdiction exists, and challenging the adequacy of the plaintiff's allegations of diversity, the Tribe has made only a facial challenge to Veeder's allegations of diversity jurisdiction.

When such a facial challenge is made,

> the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6). The general rule is that a complaint should not

be dismissed " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' "

*Osborn,* 918 F.2d at 729. *See also Titus v. Sullivan,* 4 F.3d 590, 593 (8th Cir.1993) ("In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction.").

The question before the court at this time is whether Veeder has alleged that he and the defendant are of diverse citizenship. The Tribe argues that Veeder has not alleged that he contracted with the Tribe in its corporate capacity. Veeder argues that in paragraph II of his complaint he alleged that "the Omaha Tribe of Nebraska ... is a *federal corporation* chartered under the Act of June 18, 1934 (48 Stat. 984 as amended)...." However, the paragraph of the complaint to which Veeder directs the court's attention, when read in full, in fact alleges that the Tribe is *both* a Section 16 governmental entity and a Section 17 corporation.[14] Veeder has not, in that paragraph, alleged against which entity his complaint is lodged, and the two are legally distinct entities. *Gaines v. Ski Apache,* 8 F.3d 726, 729 (10th Cir.1993).

Veeder next argues that his complaint also alleges that his contract was approved by the Omaha Tribal Council, "which is the governing body of the Tribe and its corporate structure." Complaint, para. VI. Veeder argues that this paragraph indicates that he is suing the corporate entity of the Tribe. The court concludes that the paragraph actually indicates only that the Tribal Council is the governing body for both of the legal entities.[15]

---

**13.** While the tribe itself is a citizen of the state of its principal place of business when organized as a corporate entity under Section 17, when exercising its powers as a sovereign governmental entity,

> [a] tribe may also charter a corporation pursuant to its own tribal laws, and such a corporation will be considered a citizen of a state for purposes of diversity jurisdiction. *Stock West, Inc. v. Confederated Tribes of the Colville Reservation,* 873 F.2d 1221, 1223 n. 3 (9th Cir.

1989); *R.C. Hedreen Co. v. Crow Tribal Hous. Auth.,* 521 F.Supp. 599, 602–03 (D.Mont.1981). *Gaines,* 8 F.3d at 729.

**14.** The complete allegation is quoted in full in the Introduction section of this ruling on page 4.

**15.** Veeder has also argued that the Resolution of the Tribal Council, which he has appended as an exhibit to his resistance, shows that his contract was with the corporate entity. Having conclud-

The court believes that Veeder's failure to specify which entity of the Tribe he is suing is fatal. *Fed.R.Civ.P. 9(a)* provides in pertinent part:

(a) **Capacity.** It is not necessary to aver the capacity of a party to sue or be sued or the authority of a party to sue or be sued ... *except to the extent required to show the jurisdiction of the court.*

*Fed.R.Civ.P. 9(a).* In *Nix v. Norman,* 879 F.2d 429 (8th Cir.1989), the Eighth Circuit Court of Appeals held that, because the Eleventh Amendment presents a jurisdictional limit on federal courts in civil rights cases against states and their employees, *Rule 9(a)* appeared to require the plaintiff in such a case to make a capacity stipulation in the complaint. *Nix,* 879 F.2d at 431. *See also Wells v. Brown,* 891 F.2d 591, 593 (6th Cir. 1989) (reading *Nix* and *Rule 9(a)* "to *require* plaintiffs to properly allege capacity in their complaint" when the Eleventh Amendment placed a jurisdictional limit on civil rights suits against states and state employees). Similar jurisdictional limits are present here, because Indian tribes generally enjoy sovereign immunity unless that immunity has been waived. *Oklahoma Tax Comm'n v. Potawatomi Indian Tribe,* 498 U.S. 505, 508, 111 S.Ct. 905, 909, 112 L.Ed.2d 1112 (1991). Thus, *Rule 9(a)* appears to require Veeder to make a capacity stipulation in his complaint.

Courts of this district have held that a Section 17 corporation waives sovereign immunity. *Investment Finance Management Co., Inc. v. Schmit Indus., Inc., et al.,* No. C86–4234, slip op. at 12, 1991 WL 635929 (N.D.Iowa; filed July 3, 1991) (The Honorable Donald E. O'Brien, then C.J.) (citing *Maryland Cas. Co. v. Citizens Nat'l Bank,* 361 F.2d 517 (5th Cir.), *cert. denied,* 385 U.S. 918, 87 S.Ct. 227, 17 L.Ed.2d 143 (1966)).[16] In the Blackbird Bend litigation, the court also held that a "sue or be sued" clause in the corporate charter of the Omaha Tribe "operates as a general waiver of sovereign immunity in lawsuits between the Tribe and non-tribal entities or persons." *Omaha Indian Tribe v. Agricultural Industrial Investment Co.,* No. C75–4067, slip op. at 3–4 n. 3 (N.D.Iowa filed April 7, 1993) (Hon. Warren K. Urbom, J.).[17] However, even when a "sue or be sued" clause exists in the charter of the Section 17 entity, such a waiver of sovereign immunity as to that entity has no effect on the immunity of the Section 16 entity if it is the Section 16 entity that has entered into the contract in question. *GNS, Inc. v. The Winnebago Tribe of Nebraska,* 866 F.Supp. 1185, 1190 (N.D.Iowa 1994) (Hon. John A. Jarvey, Chief Mag. J.) (holding that the Winnebago Tribe had preserved sovereign immunity from suit by managers of its casino operation by entering into the contract with the managers in its Section 16 capacity).

Other jurisdictions agree on the effect of the "sue or be sued" clause in a Section 17 corporate charter and the conclusion that such a clause in the corporate charter does not waive the tribe's immunity as a tribe:

Sections 16 and 17 of the Indian Reorganization Act, 25 U.S.C. § 476, 477 (1982),

ed that the Tribe has made a facial challenge to the complaint, the court will not consider the Resolution. Were it to do so, however, the court does not believe that the Resolution bears the inference for which Veeder argues. This Resolution does not state that the Tribe as a corporation will enter into a contract with an attorney for legal services, which appears to be the proposition in support of which Veeder has offered it. Plaintiff's Brief in Support of Resistance to Motion to Dismiss, Ex. 1. Rather, it states that the Tribe and the Bureau of Indian Affairs have agreed on the manner in which legal representation for the Blackbird Bend litigation will be funded.

**16.** In the *IFM* case, the court held that the Winnebago Tribe "entered into the contract as a section 17 corporation and not as a section 16 corporation, thus waiving its sovereign immunity. Section 17 corporations waive sovereign immunity. *See Maryland Cas. Co. v. Citizens Nat'l Bank,* 361 F.2d 517 (5th Cir.), *cert. denied,* 385 U.S. 918, 87 S.Ct. 227, 17 L.Ed.2d 143 (1966)." *IFM,* slip op. at 12. The court continued that "it is also possible that the Winnebago Tribal Charter may waive the Tribe's sovereign immunity" because it contained a "sue or be sued" clause. *Id.*

**17.** The court does not read either of these cases to mean that a waiver of sovereign immunity by the corporate entity of a Tribe also waives sovereign immunity as to the governmental entity. The two entities are legally separate, *Gaines,* 8 F.3d at 729, and therefore the actions of one entity cannot necessarily be attributed to the other.

authorize tribes to organize and adopt a constitution and a corporate charter. The corporate charters usually include a "sue or be sued" clause to enable the tribes to engage in commercial activity as corporations without losing their sovereign immunity as tribes. This court has held that the presence of such a clause in a tribal corporate charter does not waive the tribe's immunity as a tribe. *See Ramey Constr. Co.*, 673 F.2d at 320; *see also Kenai Oil & Gas, Inc. v. Department of Interior*, 522 F.Supp. 521 (C.D.Utah 1981), *aff'd and remanded*, 671 F.2d 383 (10th Cir.1982). *See also Gold v. Confederated Tribes of the Warm Springs Indian Reservation*, 478 F.Supp. 190, 196 (D.Or.1979); *Boe v. Fort Belknap Indian Community*, 455 F.Supp. 462 (D.Mont.1978), *aff'd.*, 642 F.2d 276 (9th Cir.1981); *but see Martinez v. Southern Ute Tribe*, 150 Colo. 504, 374 P.2d 691 (1962) (construing "sue and be sued" clause as rendering tribe amenable to suit in Colorado state court under Colorado constitution); *cf. Fontenelle v. Omaha Tribe of Nebraska*, 430 F.2d 143 (8th Cir. 1970) (tribe/corporate distinction not raised). *Seneca–Cayuga Tribe v. State ex rel. Thompson*, 874 F.2d 709, 715–16 n. 9 (10th Cir. 1989).

The court concludes that, by virtue of the sue or be sued clause in its charter, the corporate entity of the Tribe has waived sovereign immunity such that this court would have subject matter jurisdiction over the present complaint if the corporate entity of the Tribe is indeed the entity that has been sued. However, the court concludes that Veeder has failed to comply with the requirements of *Fed.R.Civ.P.* 9(a) to plead the capacity of the Tribe to sue or be sued by failing to specify which legal entity he is suing. Veeder's complaint is therefore inadequate on its face and must be dismissed pursuant to *Fed.R.Civ.P.* 12(b)(1).

### D. Comity

■ The Tribe also argues that even if the court has subject matter jurisdiction and the Tribe has waived sovereign immunity, the court should as a matter of comity defer to tribal remedies until Veeder has exhausted those remedies. In *Nat'l Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985), the Court considered whether a non-Indian must first exhaust remedies in tribal court before an injunction could issue in federal court. In a footnote, the Court suggested in dicta that exhaustion of remedies in tribal court would not be required in specific circumstances:

> We do not suggest that exhaustion would be required where an assertion of tribal jurisdiction 'is motivated by a desire to harass or is conducted in bad faith,' cf. *Juidice v. Vail*, 430 U.S. 327, 338 [97 S.Ct. 1211, 1219, 51 L.Ed.2d 376] (1977), or where the action is patently violative of express jurisdictional prohibitions, or where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction.

*Nat'l Farmers Union*, 471 U.S. at 856 n. 21, 105 S.Ct. at 2454 n. 21. Similarly, in his concurrence in *Oklahoma Tax Comm'n v. Potawatomi Indian Tribe*, 498 U.S. 505, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991), Justice Stevens concluded that the majority had impliedly recognized that tribal sovereign immunity does not necessarily extend to actions seeking equitable relief. *Potawatomi Indian Tribe*, 498 U.S. at 514–16, 111 S.Ct. at 912–13. In *Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987), the Supreme Court reiterated the need for non-Indians to exhaust tribal remedies in most civil cases before seeking review in federal court. It stated that

> [r]egardless of the basis for jurisdiction, the federal policy supporting the tribal self-government directs a federal court to stay its hand in order to give the tribal court a "full opportunity to determine its own jurisdiction." * * * At a minimum, exhaustion of tribal remedies means that tribal appellate courts must have the opportunity to review the determinations of the lower tribal courts.

*Id.* at 16, 107 S.Ct. at 976. *See also DeMent v. Oglala Sioux Tribal Court*, 874 F.2d 510, 516 (8th Cir.1989) (quoting *LaPlante* ). This tribal exhaustion rule does "not deprive the federal courts of subject-matter jurisdiction." *Id.*, 480 U.S. at 16 n. 8, 107 S.Ct. at 976 n. 8.

Rather, "as a matter of comity," the federal courts had declined to hear a case when "strong federal policy concerns favored resolution in the nonfederal forum." *Id.* *See also Texaco, Inc. v. Zah,* 5 F.3d 1374, 1377 (10th Cir.1993) (considering whether federal policies favored resolution of a dispute involving a tribe's power to tax off-reservation activities by tribal authority or federal court). Comity does not require the federal court to dismiss the action before it; rather, the district court may stay the proceedings until tribal remedies have been exhausted. *Altheimer & Gray v. Sioux Mfg. Corp.,* 983 F.2d 803, 813 (7th Cir.1993). Because the court determined above that it does not have subject matter jurisdiction over this matter, the court need not address the parties' comity and exhaustion arguments.

## III. CONCLUSION

In light of the dual nature of the tribal organization permitted Native American tribes under the Indian Reorganization Act of 1934, 25 U.S.C. § 461 *et seq.* (IRA), the court concludes that Veeder has not adequately pleaded jurisdiction as required by *Fed.R.Civ.P.* 9(a). It is unclear from the complaint whether Veeder has brought this suit against the Section 16 governmental entity of the Omaha Tribe or against the Section 17 corporate entity. The court believes that it would have no basis for subject matter jurisdiction over the Omaha Tribe as a Section 16 governmental entity, but that it could exercise diversity jurisdiction over the Section 17 corporate entity of the Tribe. In such circumstances, *Rule* 9(a) requires Veeder to plead the capacity of the entity he is suing. Veeder has failed to do so. The defendant's March 30, 1994, motion to dismiss for lack of subject matter jurisdiction is granted.

**IT IS SO ORDERED.**