Mark **DREVLOW**, Appellant,

v.

**LUTHERAN CHURCH, MISSOURI SYNOD**, Appellee.

No. 92–2874.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 14, 1993.

Decided April 15, 1993.

Terry A. Bond, St. Louis, MO, argued, for appellant.

Brian C. Howe, St. Louis, MO, argued (Donald L. James, on the brief), for appellee.

Before WOLLMAN and BEAM, Circuit Judges, and BOGUE,* Senior District Judge.

BEAM, Circuit Judge.

Mark Drevlow appeals the district court's order dismissing his diversity complaint against the Lutheran Church, Missouri Synod (Synod) on First Amendment grounds. Because the First Amendment does not bar all of Drevlow's claims against the Synod, we reverse.

## I. BACKGROUND

On September 5, 1991, Drevlow filed a three-count complaint in the district court seeking damages against the Synod under Missouri law for libel, negligence, and intentional interference with his legitimate expectancy of employment. The essence of Drevlow's claims is that he was injured when the Synod placed false information in his personal file. Count III of the complaint contains the additional charge that the Synod "unlawfully and without consideration and in violation of the [Synod's] bylaws" withdrew his name from its list of eligible ministers.

The allegations of Drevlow's complaint can be summarized as follows: Drevlow is an ordained minister within the Synod. As one of its services for member churches, the Synod prepares and circulates personal information files on its ministers to churches interested in hiring pastors and advises them on the background and suitability of individual ministers. Without consulting Drevlow or verifying the accuracy of its information, the Synod placed a document in Drevlow's file stating that his spouse had previously been married. This accusation was untrue. Drevlow claims

* The HONORABLE ANDREW W. BOGUE, Senior United States District Judge for the District of South Dakota, sitting by designation.

that because churches within the Synod automatically disqualify a minister if his personal file shows that his spouse has been divorced, the Synod effectively excluded Drevlow from consideration for employment as a pastor by circulating this false information.

At the time the Synod was circulating the erroneous statement about his spouse, Drevlow was actively, and unsuccessfully, seeking employment as a pastor. Even though he was established in his profession and over three hundred churches were in need of a pastor, Drevlow did not obtain a position as a pastor within the Synod. He seeks damages for his loss of income during the time that the Synod circulated the false information about his spouse and for his loss of public confidence and social intercourse.

Before discovery was completed, the Synod filed a motion to dismiss the complaint for lack of subject matter jurisdiction, arguing that the First Amendment barred consideration of Drevlow's claims. The district court found that the portion of Count III which is based on the allegation that the Synod suspended Drevlow from its list of eligible ministers in violation of its bylaws would require the court to construe Synodical doctrine and to review an essentially religious decision in violation of the First Amendment. *Drevlow v. The Lutheran Church–Missouri Synod*, No. 91–1845C(8) Memorandum and Order at 3–4 (E.D.Mo. Aug. 5, 1992). With regard to the remainder of the complaint, the district court found that because the major element of damages claimed in all three counts is Drevlow's failure to secure employment with any church within the Synod, any calculation of damages would necessitate a finding of Drevlow's marketability as a pastor, a matter strictly between the clergy and the church. Accordingly, the district court concluded that it lacked subject matter jurisdiction to adjudicate any of Drevlow's claims.

The court further noted that exhibits attached to Drevlow's affidavit in opposition to the Synod's motion to dismiss indicated that Drevlow attempted to resolve his complaints through Synod channels before bringing this action in federal court. Analogizing the Synod's refusal to adjudicate the matter to dismissal by a civil court, the court concluded that it was bound by the Synod's final ecclesiastical determination of the merits of plaintiff's allegations. *Id.* at 6.

## II. DISCUSSION

■■■ The district court has the authority to consider matters outside the pleadings on a motion challenging subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir.1990) (discussing the difference between Fed. R.Civ.P. 12(b)(1) and 12(b)(6) when matters outside the pleadings are considered by the court). If material facts are adjudicated by the district court in the process of determining its jurisdiction, we review the court's findings of fact for clear error. *Id.* at 730. Where the material facts are not in dispute, as in this case,[1] we review the district court's determination that it lacks jurisdiction de novo. *Id.*

■■■ As an initial matter, we agree with the district court that the First Amendment bars adjudication of that portion of the complaint which alleges that the Synod violated its own bylaws by removing Drevlow's name from its list of eligible ministers. It is a fundamental tenet of First Amendment jurisprudence that:

the First and Fourteenth Amendments permit hierarchical religious organizations to establish their own rules and regulations for internal discipline and government, and to create tribunals for adjudicating disputes over these matters. When this choice is exercised and ecclesiastical tribunals are created to decide disputes over the government and direction of subordinate bodies, the Consti-

---

**1.** The Synod has not challenged the contents of Drevlow's affidavit in opposition to the Synod's motion to dismiss nor has it challenged the attached correspondence between Drevlow and the President of the Synod.

tution requires that civil courts accept their decisions as binding upon them. *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 724–25, 96 S.Ct. 2372, 2387–88, 49 L.Ed.2d 151 (1976). The Constitution forbids secular courts from deciding whether religious doctrine or ecclesiastical law supports a particular decision made by church authorities.[2] *Scharon v. St. Luke's Episcopal Presbyterian Hosps.*, 929 F.2d 360, 363 (8th Cir.1991).

■ Drevlow's claim that the Synod violated its own bylaws by removing his name from its list of eligible ministers falls squarely into the category of claims that are not justiciable by secular courts. Drevlow petitioned the President of the Synod for adjudication of his grievance. App. at 16–23. The President denied Drevlow's petition on May 2, 1990, reasoning that since Drevlow had accepted a position as pastor of a congregation in the Minnesota South District, the matter had been reconciled and the object of the bylaws had been achieved. App. at 23. We cannot disturb this decision by the Synod President interpreting and applying the Synod's bylaws. Accordingly, we find that the district court lacks subject matter jurisdiction to hear that portion of Count III pertaining to Drevlow's suspension from the Synod's list of eligible ministers.

The remainder of Drevlow's complaint is based upon his allegation that while his name was on the Synod's list of eligible ministers, the Synod circulated a personal information file containing false information about his spouse. It is undisputed that Drevlow's file "contained the erroneous statement that a prior marriage of [Drevlow's] wife ended in divorce." *Drevlow*, Memorandum and Order at 4 (citation omitted). The Synod argues, however, that the First Amendment precludes Drevlow from proving at trial that this false information kept him from obtaining employment as a pastor. According to the Synod, any assessment of Drevlow's claim for loss of income would necessitate a forbidden inquiry into Drevlow's marketability as a pastor. We disagree.

■ The First Amendment proscribes intervention by secular courts into many employment decisions made by religious organizations based on religious doctrine or beliefs. Personnel decisions are protected from civil court interference where review by civil courts would require the courts to interpret and apply religious doctrine or ecclesiastical law. *See Milivojevich*, 426 U.S. at 717–20, 96 S.Ct. at 2384 (review of church decision to defrock Bishop impermissible where resolution required interpretation of internal church procedures); *Scharon*, 929 F.2d at 363 (resolution of Title VII and ADEA claims required impermissible inquiry into the good faith of position asserted by clergy-administrators); *Kaufmann v. Sheehan*, 707 F.2d 355, 358 (8th Cir.1983) (priest's claim that church officials denied him ecclesiastical due process and violated his canonical rights goes to the heart of internal church faith and discipline); *Knuth v. The Lutheran Church Missouri Synod*, 643 F.Supp. 444 (D.Kan.1986) (court lacks subject matter jurisdiction to review removal of minister from clergy roster). The First Amendment does not shield employment decisions made by religious organizations from civil court review, however, where the employment decisions do not implicate religious beliefs, procedures, or law. *See Scharon*, 929 F.2d at 363 n. 3 (and cases cited therein).

■ At the present stage of this litigation we are unable to predict that the evidence offered at trial will definitely involve the district court in an impermissible inquiry into the Synod's bylaws or religious beliefs. Drevlow has alleged that although over three hundred congregations were in need of a pastor he did not receive an offer of employment from any congregation while the Synod was circulating false information about his spouse. Drevlow's fit-

---

**2.** The Supreme Court has left open the possibility that exceptions to this rule may permit secular courts to review ecclesiastical decisions for fraud or collusion. *See Milivojevich*, 426 U.S. at 713, 96 S.Ct. at 2382 (holding that no arbitrari- ness exception exists despite dicta in *Gonzalez v. Archbishop*, 280 U.S. 1, 16, 50 S.Ct. 5, 7, 74 L.Ed. 131 (1929)). There are no allegations of fraud or collusion in this case.

ness as a minister is not in dispute because his name was on the Synod's roster of eligible ministers during the relevant period. Correspondence between the Synod President and Drevlow indicates that after the false information was removed from his file, Drevlow did receive an offer and is now a pastor. App. at 23. Drevlow claims that he was injured by the Synod's alleged libel, negligence, or intentional interference with his legitimate expectation of employment. The Synod has not offered any religious explanation for its actions which might entangle the court in a religious controversy in violation of the First Amendment.[3] Drevlow is entitled to an opportunity to prove his secular allegations at trial.

On remand, the district court must exercise care to ensure that the evidence presented at trial is of a secular nature. The court has expressed concern that it may become entangled in inherently religious determinations of Drevlow's fitness for the ministry if Drevlow attempts to offer evidence at trial of other efforts by the Synod to impugn his fitness for pastoral office. *Drevlow,* Memorandum and Order at 5. It is incumbent upon the court to limit the evidence at trial in order to avoid determining religious controversies. If further proceedings reveal that this matter cannot be resolved without interpreting religious procedures or beliefs, the district court should reconsider the Synod's motion to dismiss.

## III. CONCLUSION

For the reasons discussed above, we reverse the order of the district court dismissing the complaint and remand for further proceedings consistent with this opinion.

---

**3.** We note that Drevlow's damages hinge on his allegation that religious beliefs lead churches within the Synod to automatically disqualify a minister from consideration if his spouse has been previously married. While the district court cannot constitutionally decide the validity of these beliefs, *see United States v. Ballard,* 322 U.S. 78, 86–88, 64 S.Ct. 882, 886–87, 88 L.Ed. 1148 (1944), the court may properly determine their existence.