**Mitchell Lee THOMPSON, Petitioner,**

v.

**John THALACKER, Respondent.**

**No. C 95–0244–MWB.**

United States District Court,
N.D. Iowa,
Cedar Rapids Division.

Dec. 24, 1996.

Philip B. Mears of Mears Law Office in Iowa City, IA, for Petitioner Mitchell Lee Thompson.

William A. Hill, Assistant Attorney General for the State of Iowa, for Respondent John Thalacker.

### MEMORANDUM OPINION AND ORDER REGARDING "MOOTNESS"

BENNETT, District Judge.

While an inmate at a state reformatory, petitioner filed this action pursuant to 28 U.S.C. § 2254 against the warden of the reformatory, alleging violation of his due process rights under the Fifth and Fourteenth Amendments, because he was deprived of an impartial factfinder during two separate prison disciplinary actions. Prior to the resolution of this *habeas corpus* action, the petitioner was discharged from prison, then rearrested and charged with new, unrelated felony counts. Before this court may address the merits of the former inmate's claim, it must first determine whether this § 2254 action is moot, owing to the petitioner's discharge from prison, or still a live "case" or "controversy"[1] based on collateral consequences that may stem from the prison disciplinary actions.

### I. INTRODUCTION

On July 20, 1995, petitioner Mitchell Lee Thompson, filed a petition for *habeas corpus* relief pursuant to 28 U.S.C. § 2254. Thompson has been represented throughout this action by Philip B. Mears of Mears Law Office, in Iowa City, Iowa. The respondent, John Thalacker, was at all relevant times the warden of the Iowa Men's Reformatory (IMR), at Anamosa, Iowa. Respondent Thalacker is represented by William A. Hill, Assistant Attorney General for the State of Iowa. In this *habeas corpus* action, Thompson alleges violations of his due process rights in two prison disciplinary actions under the Fifth and Fourteenth Amendments on the ground that the administrative law judge involved was not an impartial factfinder.

---

1. U.S. Const., Art. III., § 2 cl. 1.

The disciplinary proceedings in question gave rise to three different challenges. First, Thompson appealed to the Iowa Department of Corrections, but his appeal was denied on March 27, 1992. Second, on July 14, 1992, Thompson was granted leave to file a civil rights action *in forma pauperis* in this federal court pursuant to 42 U.S.C. § 1983. That action was stayed on May 4, 1993, to allow exhaustion of claims in a state post-conviction relief action. Following completion of state post-conviction relief proceedings, cross-motions for summary judgment were filed in the § 1983 action on one of the claims not also presented in the present *habeas corpus* action, a claim for return of property.[2] Third, and much later, the petitioner also filed the present *habeas corpus* action on July 20, 1995.

Although Thompson was in prison at the time he filed this *habeas corpus* petition, he has since been discharged, then rearrested on new charges. The question the court must answer in order to decide whether it can reach the merits of this *habeas corpus* action is, what is the effect of Thompson's release from prison and subsequent rearrest on the "mootness" of this *habeas corpus* action? In order to answer this question, the court must examine the interplay between *habeas corpus* and § 1983 actions, as well as the interplay, if any, between discipline during prior incarceration and enhancement of penalties during future incarceration.

### A.  Procedural Background

On March 3, 1992, the IMR Adjustment Committee found Thompson guilty of violating an IMR disciplinary rule prohibiting possession of a "debt list." On March 5, 1992, the IMR Adjustment Committee found Thompson guilty of violating another IMR disciplinary rule against unauthorized possession of property. On November 17, 1993, in what was to be a precursor to the present federal *habeas corpus* action, the Iowa District Court in and for Jones County held a hearing on Thompson's application for post-

conviction relief under Chapter 822 of the Iowa Code. Thompson sought relief on three main issues: (1) that the two disciplinary hearings violated his right to procedural and substantive due process of law under the Fifth and Fourteenth Amendments, because the disciplinary committee did not make a good faith determination regarding the veracity of witnesses and there was insufficient evidence of guilt on which to base a trustworthy decision; (2) the Administrative Law Judge was not an impartial factfinder and violated Thompson's right to an impartial disciplinary hearing; and (3) the "some evidence" standard of proof used by the disciplinary committee violated Thompson's due process rights. The second of these claims is now at issue in this *habeas corpus* action. The state district court held that Thompson's right to due process was not violated and there was adequate evidence to support the committee's findings in both disciplinary actions against Thompson. The state district court also held that the neutrality of the administrative law judge was not impaired when his prior dealings with Thompson were tied to his ministerial duties and were not personal. The state district court therefore affirmed the decision of the Iowa Department of Corrections and denied Thompson's application for post-conviction relief. However, the court did find that the Adjustment Committee erred in confiscating Thompson's property.

On May 24, 1995, the Iowa Supreme Court, in a de novo review, affirmed the decision of the Iowa district court. Ruling on both prison disciplinary actions, the Iowa Supreme Court held that Thompson was not denied due process of law by the IMR Adjustment Committee. As to the claim now at issue in this federal *habeas corpus* action, the Iowa Supreme Court found that the Administrative Law Judge (ALJ) did not have a preexisting personal bias against Thompson, and thus the ALJ was not required to recuse

---

**2.** Upon the report and recommendation of a magistrate judge of this district, this court has granted the partial summary judgment motion of the defendants in the § 1983 action, denied Thompson's motion for summary judgment, and recommitted to the magistrate judge consideration of the claims that are related to those brought in this *habeas corpus* action pending disposition of this action.

himself from the proceedings. *Thompson v. State*, 533 N.W.2d 215 (Iowa 1995).

Having properly exhausted all of his state court post-conviction remedies, Thompson filed this action in federal court on July 20, 1995, pursuant to 28 U.S.C. § 2254, again challenging the disciplinary actions.[3] Thompson's application for a writ of *habeas corpus* seeks relief from both prison disciplinary actions on one issue. That issue is Thompson's assertion that his right to an impartial disciplinary hearing was violated when the ALJ for both disciplinary actions, Larry Brimeyer, failed to recuse himself, despite knowledge that Thompson had written to an Iowa District Court Judge asking that the judge hold Brimeyer in contempt of court for not honoring a court order entered December 9, 1991, in unrelated proceedings. As relief, Thompson seeks to invalidate the results of the disciplinary proceeding by asking this court to restore his prior status, set aside the disciplinary sanctions, and expunge the disciplinary reports.

Upon initial review, on August 29, 1995, the court granted Thompson leave to proceed *in forma pauperis*. Pursuant to a scheduling order filed on November 11, 1995, all briefs and arguments on the merits of the *habeas corpus* action were to have been filed by January 2, 1996. However, Thompson was discharged from the IMR on December 9, 1995, and the action languished. On January 26, 1996, the court ordered the parties to file the required briefs within fourteen days or be subject to dismissal for lack of prosecution or mootness.

In response to the court's "wake-up" order, respondent filed, on February 9, 1996, a motion to dismiss the action on the ground that the action was moot.[4] Thompson's attorney filed a petitioner's status report on February 16, 1996, stating that he was not in contact with his client and requesting an extension to ascertain Thompson's interest in the litigation. On March 7, 1996, counsel informed the court that Thompson desired to continue the litigation and was being held pending trial on felony charges in Mason City, Iowa. Thompson seeks to maintain his *habeas corpus* action under the doctrine of collateral consequences. Thompson asserted in his status report that the allegedly improper prison disciplinary actions will have a negative collateral impact on his potential future incarceration in Iowa. In addition, he contends dismissal of this *habeas corpus* action will have a negative impact on his § 1983 action.

In response to the status report, the court granted an extension for Thompson's attorney to dismiss the action voluntarily or to file a brief limited to the issue of mootness. On April 11, 1996, petitioner filed such a brief. Thompson contends that his physical release from the IMR does not render this *habeas corpus* action moot, because the collateral consequences of the prison disciplinary actions render this *habeas corpus* action a live "case" or "controversy." U.S. CONST., Art. III., § 2 cl. 1. Thompson argues that his possible immediate reentry into the Iowa penal system due to new felony charges may subject him to enhanced punishment as a consequence of the prior, assertedly unconstitutional, prison disciplinary actions. Further, Thompson contends that unless he is able to argue his *habeas corpus* case upon the merits, his related § 1983 action will be barred by the doctrine of issue preclusion.

On April 24, 1996, respondent filed a brief on the issue of mootness accompanied by an affidavit of James McKinney, Deputy Director for the Division of Institutions for the Iowa Department of Corrections. The affiant stated that, under the disciplinary rules and procedures of the Iowa Department of

---

3. Section 2254(b) provides, in pertinent part, that "[a]n application for a writ of *habeas corpus* ... shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b) (1988); *see Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) (federal district court must dismiss a state prisoner's habeas corpus petition containing both exhausted and unexhausted claims).

4. The respondent filed a motion to dismiss without citing a legal basis, thus failing to meet the requirements of N.D.Ia. LR 14(b). The court construes this motion to be a motion to dismiss pursuant to *Fed.R.Civ.P.* 12(b)(1) for lack of subject matter jurisdiction.

Corrections, an inmate's past disciplinary record cannot be used to enhance future disciplinary charges when the inmate is incarcerated under a new criminal sentence. In his brief, the respondent contends that Thompson's *habeas corpus* action must be dismissed as moot. The respondent argues that this case became moot upon the physical release of Thompson, because Thompson cannot prove that the alleged illegal punishment may produce some collateral consequences independent of the underlying conviction. The respondent further contends that Thompson's companion 42 U.S.C. § 1983 claim does not prevent the *habeas corpus* challenge from becoming moot upon his discharge.

Thompson's § 1983 action, which figures in both Thompson's and respondent's "mootness" arguments, also remains unresolved. In that action, Thompson originally asserted due process violations based on the alleged lack of an impartial factfinder that he also asserts here. He has thus far not obtained a favorable state-court determination of that issue. However, the Iowa Supreme Court ruled in Thompson's favor on another issue central to the § 1983 action, holding that Thompson was improperly deprived of the necklace and cross found to be unauthorized property in one of the disciplinary proceedings complained of here. Thompson and the defendants in the § 1983 action filed cross-motions for summary judgment on the deprivation of property claim. A magistrate judge of this district, to whom the § 1983 action had been referred, submitted a report and recommendation recommending that the § 1983 defendants' motion for summary judgment on the deprivation of property claim be granted, on the ground of qualified immunity of the defendants, and that Thompson's motion for summary judgment on that claim consequently be denied. On December 20, 1996, this court accepted the magistrate judge's report and recommended disposition

of the deprivation of property claim in the § 1983 action, but recommitted to the magistrate judge the impartial factfinder claims related to those asserted in this *habeas corpus* action. Thompson has not withdrawn the impartial factfinder claims in his § 1983 action, nor have those claims been dismissed by the court, although the court has stayed disposition of those claims in the § 1983 action until the present *habeas corpus* action has been resolved. Therefore, the court must treat the impartial factfinder claim as currently before the court in both the § 1983 action and the present *habeas corpus* action and must consider the potential interplay disposition of the claim in one action might have upon the related claim in the other action.[5]

The question of the mootness of this *habeas corpus* action is now fully submitted, and the court therefore turns to determination of this preliminary, albeit critical, issue.

### B. Factual Background

Thompson's challenge to the prison disciplinary action arises from the assertion that the ALJ, Larry Brimeyer, was biased by his knowledge that Thompson had sought a contempt order against him from Iowa District Judge Bovard, because of Brimeyer's failure to implement Judge Bovard's court order of December 9, 1991, entered in an unrelated action. Thompson had written Judge Bovard a letter in which he requested that Brimeyer be held in contempt. The record does not reveal what, if any, action Judge Bovard took in response to Thompson's letter. Nor does it reveal whether Brimeyer received a copy of Thompson's letter at the time it was sent to the judge.

Sometime between January 20 and February 20, 1992, Thompson wrote a list of inmates' names on the back of a copy of his letter to Judge Bovard. Tr.Trans., Iowa District Court, post-conviction relief proceedings (hereinafter "State PCR Trans."), 19–20.[6]

5. *See Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (habeas corpus petitioner is able to seek damages under § 1983 claims if he favorably terminates the disciplinary ruling lengthening his sentence); *Offet v. Solem,* 823 F.2d 1256 (8th Cir.1987) (inmate's § 1983 action in federal court for damages or declaratory relief for unconstitutional deprivation of good-

time credits should be stayed until inmate has satisfied the exhaustion requirement for his habeas corpus action).

6. The court can rely on the facts as found in the state PCR proceedings to establish the background in this action. In *habeas corpus* proceedings, federal district courts presume all state

Following each of the inmates' names was a numerical representation. State PCR Trans. 12–15, 24–30. On February 20, 1992, during an inspection of Thompson's cell by correctional officers, the letter bearing the list was taken as evidence. State PCR Trans., Respondent's Exh. 304A, 1–2. On February 26, 1992, prison officers confiscated a gold chain and brass cross from Thompson after he failed to produce a receipt for the property. State PCR Trans., Respondent's Exh. 305A, 2–3.

On March 3, 1992, after reviewing evidence and hearing testimony, the IMR Adjustment Committee found Thompson guilty of violating Rule 30, *Information Guide, Iowa State Men's Reformatory* (hereinafter, "IMR Rule 30"), because the committee found Thompson had possessed a "debt list." [7] The Adjustment Committee sentenced Thompson to forty days disciplinary detention and the loss of sixteen days of good-time credit for the Rule 30 violation. On March 5, 1992, after reviewing evidence and hearing testimony, the Adjustment Committee again found Thompson guilty, this time of violating IMR Rule 16 against unauthorized possession of a gold chain and brass cross necklace.[8] Thompson was sentenced to seven days of disciplinary detention and the loss of eight days of good-time credit for the Rule 16 violation. The debt list and the gold chain and brass cross necklace were confiscated. The necklace is no longer in the possession of the State of Iowa, because it has since been lost or destroyed.

## II. LEGAL ANALYSIS

The respondent's motion to dismiss and Thompson's response invite the court to consider whether this court has subject matter jurisdiction over the present petition, *i.e.,* whether Thompson's *habeas corpus* action is "moot" as the result of Thompson's discharge from prison, or whether there are sufficient "collateral consequences" resulting from the prior, assertedly unconstitutional, prison disciplinary actions to prevent Thompson's *habeas corpus* petition from being dismissed as "moot."

### A. Subject Matter Jurisdiction

The federal district courts have always been courts of limited jurisdiction. *See* U.S. CONST., Art. III, § 1. "Federal courts are not courts of general jurisdiction and have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Marine Equip. Management Co. v. United States,* 4 F.3d 643, 646 (8th Cir.1993) (citing *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501, *reh'g denied,* 476 U.S. 1132, 106 S.Ct. 2003, 90 L.Ed.2d 682 (1986), citing, in turn, *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803)); *see also Neighborhood Transp. Network, Inc. v. Pena,* 42 F.3d 1169, 1171 (8th Cir.1994) (federal court jurisdiction is limited by Article III of the Constitution). A federal court therefore has a duty to assure itself that the threshold requirement of subject matter jurisdiction has been met in every case. *Bradley v. American Postal Workers Union, AFL–CIO,* 962 F.2d

---

court determinations of fact are correct unless the factual determinations are not fairly supported by the record. 28 U.S.C. § 2254(d)(8) (1988); *Sumner v. Mata,* 449 U.S. 539, 550, 101 S.Ct. 764, 770–71, 66 L.Ed.2d 722 (1981); *Blair–Bey v. Nix,* 44 F.3d 711, 713 (8th Cir.1995); *Bainter v. Trickey,* 932 F.2d 713, 715–16 (8th Cir.1991); *Woods v. Armontrout,* 787 F.2d 310, 313 (8th Cir.1986), *cert. denied,* 479 U.S. 1036, 107 S.Ct. 890, 93 L.Ed.2d 842 (1987). In the alternative, a petitioner may establish by the record that one of seven conditions exists which overcome that presumption. *See* 28 U.S.C. § 2254(d)(1)–(7). Thompson has not asserted any of these seven conditions in this action.

**7.** IMR Rule 30 provides, in pertinent part, that "[a]n inmate commits an offense under this sub-

section when the inmate ... [p]ossesses in any manner debt lists." IMR Rule 30(f).

**8.** IMR Rule 16 provides, in pertinent part, that "[a]n inmate commits an offense under this subsection if the inmate has in possession on the person, in the inmate's cell, in the inmate's immediate sleeping area, locker, or immediate place of work or other program assignment, or receives from or gives to another inmate, or fashions or manufactures, or introduces or arranges to introduce into the institution any contraband delineated as contraband or dangerous contraband including but not limited to ... [p]roperty belonging to someone else or anything not authorized." IMR Rule 16(g).

800, 802 n. 3 (8th Cir.1992) (citing *Sanders, infra); Thomas v. Basham,* 931 F.2d 521, 523 (8th Cir.1991); *Jader v. Principal Mut. Life Ins. Co.,* 925 F.2d 1075, 1077 (8th Cir. 1991); *Barclay Square Properties v. Midwest Fed. Sav. & Loan Ass'n,* 893 F.2d 968, 969 (8th Cir.1990); *Sanders v. Clemco Indus.,* 823 F.2d 214, 216 (8th Cir.1987).

"The parties ... may not confer subject matter jurisdiction upon the federal courts by stipulation, and lack of subject matter jurisdiction cannot be waived by the parties or ignored by the court." *Pacific Nat'l Ins. Co. v. Transport Ins. Co.,* 341 F.2d 514, 516 (8th Cir.), *cert. denied,* 381 U.S. 912, 85 S.Ct. 1536, 14 L.Ed.2d 434 (1965); *see also Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 25, 109 S.Ct. 2273, 2287, 105 L.Ed.2d 1 (1989) (Stevens, J., concurring) ("[T]he cases are legion holding that a party may not waive a defect in subject-matter jurisdiction or invoke federal jurisdiction simply by consent," citing *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 377 n. 21, 98 S.Ct. 2396, 2404 n. 21, 57 L.Ed.2d 274 (1978); *Sosna v. Iowa,* 419 U.S. 393, 398, 95 S.Ct. 553, 556–57, 42 L.Ed.2d 532 (1975); *California v. LaRue,* 409 U.S. 109, 112 n. 3, 93 S.Ct. 390, 394, 34 L.Ed.2d 342 (1972); *American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 17–18 & n. 17, 71 S.Ct. 534, 541–42 & n. 17, 95 L.Ed. 702 (1951); *Mitchell v. Maurer,* 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934); *Jackson v. Ashton,* 33 U.S. (8 Pet.) 148, 149, 8 L.Ed. 898 (1834)), *overruled on other grounds, Seminole Tribe of Florida v. Florida,* —— U.S. ——, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *Lawrence County v. South Dakota,* 668 F.2d 27, 29 (8th Cir.1982) ("[F]ederal courts operate within jurisdictional constraints and ... parties by their consent cannot confer subject matter jurisdiction upon the federal courts."). Even where "'the parties did not raise any jurisdictional issues[, t]his court is obligated to raise such jurisdictional issues if it perceives any.'" *White v. Nix,* 43 F.3d 374, 376 (8th Cir.1994) (quoting *Lewis v. United States*

*Farmers Home Admin.,* 992 F.2d 767, 771 (8th Cir.1993)).

### 1. Subject matter jurisdiction and "mootness"

Mootness is a jurisdictional matter arising under the requirement in Article III of the Constitution that there be a live "case" or "controversy." U.S. CONST. Art. III., § 2 cl. 1. The Eighth Circuit Court of Appeals recently explained this requirement in *Mausolf v. Babbitt:*

> Our Constitution is a charter for limited government. Article III limits the "judicial power" to "cases" and "controversies." From this "bedrock requirement" flow several doctrines—e.g., standing, mootness, ripeness, and political question—which "state fundamental limits on federal judicial power in our system of government." Article III's standing requirement is a restraint on the "judicial power" as unyielding as that placed on Congress by, for example, the First Amendment.

*Mausolf v. Babbitt,* 85 F.3d 1295, 1300 (8th Cir.1996) (citations omitted). The interplay of two of these doctrines flowing from the "bedrock requirement" of a case or controversy is at issue here. Those two doctrines are "standing" and "mootness."

Only persons "in custody in violation of the Constitution or laws ... of the United States" have standing to pursue a *habeas corpus* action. *See* 28 U.S.C. § 2241(c)(3); *see also* 28 U.S.C. § 2254(a).[9] A petition for *habeas corpus* relief must be filed in federal court while the petitioner is in custody. *See Maleng v. Cook,* 490 U.S. 488, 492, 109 S.Ct. 1923, 1926, 104 L.Ed.2d 540 (1989). The "in custody" requirement is satisfied if the petitioner suffers "substantial restraints" not suffered by the general public. *See Hensley v. Municipal Court,* 411 U.S. 345, 351, 93 S.Ct. 1571, 1574–75, 36 L.Ed.2d 294 (1973) (a petitioner released on his own recognizance pending execution of a sentence was "in custody" for federal *habeas corpus* determination); *Jones v. Cunningham,* 371 U.S. 236,

---

**9.** 28 U.S.C. § 2254(a) provides as follows:

The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

243, 83 S.Ct. 373, 377, 9 L.Ed.2d 285 (1963) (a paroled prisoner "in custody" for purposes of *habeas corpus* ). Thompson satisfied the "in custody" requirement at the time he filed his petition with this court on July 20, 1995, as his underlying criminal sentence was extended by the two disciplinary actions in dispute. However, Thompson's "in custody" status was terminated upon the discharge of his sentence and release from custody on December 9, 1995. The termination of a prisoner's "in custody" status generally renders a § 2254 action "moot" and precludes a federal court from entertaining a petition pursuant to § 2254 for lack of subject matter jurisdiction. *Leonard v. Nix,* 55 F.3d 370 (8th Cir. 1995).

### 2. Challenges to subject matter jurisdiction

Thalacker has moved "to dismiss," presumably for lack of subject matter jurisdiction pursuant to *Fed.R.Civ.P.* 12(b)(1), asserting that Thompson's *habeas corpus* petition has indeed been mooted by Thompson's discharge from prison. Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may raise the defense of "lack of jurisdiction over the subject matter" in a motion before answering the complaint filed in any action. For the court to dismiss for lack of subject matter jurisdiction under *Fed. R.Civ.P.* 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments. *Titus v. Sullivan,* 4 F.3d 590, 593 (8th Cir.1993). The court in *Titus* distinguished between the two kinds of challenges:

> In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject

matter jurisdiction. *Eaton v. Dorchester Dev., Inc.,* 692 F.2d 727, 731–32 (11th Cir. 1982). . . .

> If the [defendant] wants to make a *factual* attack on the jurisdictional allegations of the complaint, the court may receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute. *Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 1011 n. 4, 91 L.Ed. 1209 (1947) [footnote omitted]. The proper course is for the defendant to request an evidentiary hearing on the issue. *Osborn [v. United States],* 918 F.2d [724,] 730 (citing *Crawford v. United States,* 796 F.2d 924, 928 (7th Cir.1986)).

*Id.*

The district court has the authority to consider matters outside the pleadings on a motion challenging subject matter jurisdiction under *Fed.R.Civ.P.* 12(b)(1). *Drevlow v. Lutheran Church, Mo. Synod,* 991 F.2d 468, 470 (8th Cir.1993). If material facts are adjudicated by the court in determining its jurisdiction, the appellate court will review the findings of fact for clear error. *Id.* Where the material facts are not in dispute, the appellate court will review the court's determination that it lacks jurisdiction de novo. *Id.* If the court considers matters outside of the pleadings, however, it may not, without notice to the parties, convert a motion to dismiss for lack of subject matter jurisdiction under *Fed.R.Civ.P.* 12(b)(1) into a motion to dismiss for failure to state a claim under *Fed.R.Civ.P.* 12(b)(6), which is subject to summary judgment disposition, because to do so would not allow the parties to respond to the issue the court is weighing for summary judgment. *Layton v. United States,* 919 F.2d 1333, 1334–35 (8th Cir. 1990).[10]

---

**10.** In *Layton,* the court noted that a 12(b)(1) motion is distinguishable from a 12(b)(6) motion on the ground that the Rules expressly provide that the latter is subject to conversion into a summary judgment motion, while no such provision exists for a 12(b)(1) motion. *Layton,* 919 F.2d at 1335. However, courts have approved such a conversion of a 12(b)(1) motion when appropriate. *Id.* (citing *Less v. Lurie,* 789 F.2d 624, 625 n. 1 (8th Cir.1986)). There is, however, an exception to the notice requirement before the

court makes a conversion into a summary judgment motion articulated in *Van Leeuwen v. United States Postal Serv.,* 628 F.2d 1093, 1095 (8th Cir.1980), which requires that if both parties have submitted affidavits and exhibits outside the pleadings, which they understand the district court has accepted for consideration, then the non-moving party has notice of the court's intention to treat the motion to dismiss as one for summary judgment. *Id.* (concluding that the court could not invoke the *Van Leeuwen* excep-

In *Osborn v. United States,* 918 F.2d 724 (8th Cir.1990), the Eighth Circuit Court of Appeals presented its most exhaustive discussion of the procedures and requirements for determination of a 12(b)(1) motion to dismiss.

> The district court was correct in recognizing the critical differences between Rule 12(b)(1), which governs challenges to subject matter jurisdiction, and Rule 56, which governs summary judgment. Rule 12 requires that Rule 56 standards be applied to motions to dismiss for failure to state a claim under Rule 12(b)(6) when the court considers matters outside the pleadings. [Citations omitted.] Rule 12 does not prescribe, however, summary judgment treatment for challenges under 12(b)(1) to subject matter jurisdiction where a factual record is developed. Nonetheless, some courts have held that Rule 56 governs a 12(b)(1) motion when the court looks beyond the complaint. We agree, however, with the majority of circuits that have held to the contrary.... [Citations omitted.]

> The reason for treating a 12(b)(1) motion differently than a 12(b)(6) motion, which is governed by Rule 56 when matters outside the pleadings are considered, "is rooted in the unique nature of the jurisdictional question." *Williamson [v. Tucker],* 645 F.2d [404,] 413 [ (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981) ]. It is "elementary," the Fourth [sic] Circuit stated, that a district court has "broader power to decide its own right to hear the case than it has when the merits of the case are reached." *Id.* Jurisdictional issues, whether they involve questions of law or of fact, are for the court to decide. *Id.* Moreover, because jurisdiction is a threshold question, judicial economy demands that the issue be decided at the outset rather than deferring it until

trial, as would occur with denial of a summary judgment motion.

*Osborn,* 918 F.2d at 729.

The *Osborn* court found the distinction between facial and factual attacks on the complaint under 12(b)(1) to be critical. *Id.* (citing *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir.), *cert. denied,* 449 U.S. 953; 101 S.Ct. 358, 66 L.Ed.2d 217 (1980), and *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977)). The court stated that

> [i]n the first instance, the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6). The general rule is that a complaint should not be dismissed " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards.

*Id.* at 729 n. 6 (citations omitted).[11] A factual challenge to jurisdiction under 12(b)(1) is unique:

> [H]ere the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56. Because at issue in a factual motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

> *Nuclear Reg. Comm'n,* 970 F.2d 421, 425 (8th Cir.1992) ], and should not approve dismissal of his complaint for failure to state a claim unless "it appears beyond doubt that [he] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80, (1957).

---

tion on the basis of a unilateral submission of exhibits by the moving party).

**11.** The standards for dismissal under Rule 12(b)(6) were recently restated in *Carney v. Houston,* 33 F.3d 893, 894 (8th Cir.1994):

> We must construe the allegations in the complaint in the light most favorable to [plaintiff], see [*Concerned Citizens of Neb. v. United States*

*Id.* at 730 (quoting *Mortensen,* 549 F.2d at 891). The *Osborn* court stated that the proper course is for the defendant to request an evidentiary hearing on the issue, and, since no statute or rule prescribes the format of such a hearing, " 'any rational mode of inquiry will do.' " *Id.* (quoting *Crawford,* 796 F.2d at 929).

> Once the evidence is submitted, the district court must decide the jurisdictional issue, not simply rule that there is or is not enough evidence to have a trial on the issue. [*Crawford,* 796 F.2d at 929.] The only exception is in instances when the jurisdictional issue is "so bound up with the merits that a full trial on the merits may be necessary to resolve the issue." *Id.*

*Id.*

■ Because this petition involves a factual challenge of subject matter jurisdiction pursuant to *Fed.R.Civ.P.* 12(b)(1), the court may consider matters outside the pleadings in order to determine the factual dispute. *See Land,* 330 U.S. at 735 n. 4, 67 S.Ct. at 1011 n. 4; *Drevlow,* 991 F.2d at 470; *Osborn,* 918 F.2d at 729. It is the petitioner's burden to show that the court does have subject matter jurisdiction. *Fed.R.Civ.P.* 12(b)(1); *see, e.g.,* 5 CHARLES WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1208, at 101 & n. 9, 103–04 & n. 12, and cases cited in both notes (1990 ed. and 1993 pocket part); 13 B *id.* § 3611, at 516–18 & nn. 27–29, § 3624, at 610 & n. 20, and cases cited in all those notes (1984 ed. and 1993 pocket part).

In the present case, respondent, the party challenging subject matter jurisdiction on a factual ground, has not requested an evidentiary hearing. *Cf. Osborn,* 918 F.2d at 730. However, the pertinent facts, among them that Thompson was discharged, then rearrested on unrelated charges, are not in dispute. Therefore, a "rational mode of inquiry," *id.* at 729, requires the court to consider the evidentiary record as it stands in light of the parties' arguments. The court now directs its attention to the legal question of whether the undisputed facts establish that this action is moot.

### B. "Mootness" And "Collateral Consequences"

■ The Supreme Court recognized an important exception to the general mootness rule for *habeas corpus* actions in recognizing the "collateral consequences doctrine." Under the collateral consequences doctrine, a *habeas corpus* action is not necessarily mooted by the prisoner's release. *See Carafas v. LaVallee,* 391 U.S. 234, 238, 88 S.Ct. 1556, 1559–60, 20 L.Ed.2d 554 (1968); *Lane v. Williams,* 455 U.S. 624, 632, 102 S.Ct. 1322, 1328–28, 71 L.Ed.2d 508 (1982); *Spencer v. Kemna,* 91 F.3d 1114, 1117 ("An attack on a criminal conviction is not rendered moot by the fact that the underlying sentence has expired if substantial penalties remain after the satisfaction of the sentence," citing *Carafas,* 391 U.S. at 237, 88 S.Ct. 1556, 1559, 20 L.Ed.2d 554); *Leonard,* 55 F.3d at 372–73; *Pinnell v. Cauthron,* 540 F.2d 938, 939 (8th Cir.1976).[12] This doctrine prevents the extinguishment of a *habeas corpus* action in circumstances where the petitioner faces significant immediate collateral consequences if the disputed conviction is allowed to stand. *Lane,* 455 U.S. at 632, 102 S.Ct. at 1327–28; *Sibron v. New York,* 392 U.S. 40, 57, 88 S.Ct. 1889, 1899–1900, 20 L.Ed.2d 917 (1968); *Carafas,* 391 U.S. at 237–38, 88 S.Ct. at 1559–60. Moreover, if the allegedly illegal punishment does not produce collateral consequences independent of the underlying conviction, the case will be mooted by physical release. *Leonard,* 55 F.3d at 373 (citing *Lane,* 455 U.S. at 632–33, 102 S.Ct. at 1327–28). The Supreme Court's rationale for the doctrine was to protect individuals who have completed their sentences, yet hold "a substantial stake in [overturning] the judgment of conviction which survives the satisfaction of the sentence." *Carafas,* 391 U.S. at 237, 88 S.Ct. at 1559 (citing *Fiswick v. United States,* 329 U.S. 211, 222, 67 S.Ct. 224, 230, 91 L.Ed. 196 (1946)); *Brewer v. Iowa,* 19 F.3d 1248, 1250–51 (8th Cir.1994).

---

12. When a petitioner has been released from custody prior to filing his *habeas corpus* petition, collateral consequences alone are not enough to satisfy the "in custody" requirement. *Maleng,* 490 U.S. at 488, 109 S.Ct. at 1923.

Thompson asserts that the question of whether this *habeas corpus* action is moot, or whether sufficient collateral consequences exist, must be answered in light of the holding of the Eighth Circuit Court of Appeals in *Leonard v. Nix*, 55 F.3d 370 (8th Cir.1995). In *Leonard,* the Eighth Circuit Court of Appeals recognized that a *habeas corpus* action is not moot where a petitioner, though released from custody, faces sufficient repercussions from his allegedly unlawful punishment. *Leonard,* 55 F.3d at 372–73. In *Leonard,* the petitioner did not challenge his criminal conviction, but rather challenged only the legality of prison discipline imposed upon him while serving his sentence. *Id.* at 373. The court concluded that the petitioner had successfully asserted two collateral consequences, preclusion of his civil rights action and possible enhanced punishment. *Id.* at 376. First, the petitioner asserted that his separate civil rights damages claim under 42 U.S.C. § 1983 would be precluded if his *habeas corpus* petition was denied. The court held that the petitioner's *habeas corpus* petition was not moot, considering there was a possibility of a § 1983 claim stemming from alleged constitutional violations while he was imprisoned. *Id.* at 376. The court stated, "Leonard's section 1983 action gives this case life, for if Leonard wins this *habeas corpus* action, the state becomes vulnerable to his section 1983 damages claim. Leonard's petition is therefore not moot." *Id.* at 373. In this case, Thompson also asserts that his 42 U.S.C. § 1983 claim will be foreclosed if his *habeas corpus* petition is dismissed as moot.

In *Leonard,* the Eighth Circuit Court of Appeals also found that, because of the prior disciplinary sanction the petitioner was challenging, the petitioner potentially faced severe treatment should he commit a future disciplinary infraction in his subsequent return to confinement on unrelated charges. *Leonard,* 55 F.3d at 376. The court stated that the petitioner's "return to custody dispenses with any doubt that may remain about the existence of collateral consequences in this case." *Id.* Thompson also asserts that the possibility of enhanced punishment in his case forestalls the mootness of his *habeas corpus* action. He contends that, because he is currently facing new felony charges, his past prison disciplinary record may be used to enhance future penalties.

The court must therefore consider whether Thompson has successfully asserted either of the "collateral consequences" found in *Leonard* as precluding the mootness of his *habeas corpus* action.

### 1. Enhanced punishment

As was noted above, the *Leonard* court held that the petitioner's "return to custody dispenses with any doubt that may remain about the existence of collateral consequences in [that] case." *Leonard,* 55 F.3d at 376. The respondent ·asserts that the language in *Leonard* regarding enhanced punishment was not based on an evidentiary hearing or response from prison officials. To refute this asserted collateral consequence in this case, the respondent has submitted the affidavit of James McKinney, Deputy Director for the Division of Institutions of the Iowa Department of Corrections (IDOC). The affiant, in his capacity as Deputy Director for IDOC, states that if "an inmate who discharges a sentence, leaves prison, and comes back into prison on a new charge, his past disciplinary record cannot be used to enhance a future disciplinary sanction." McKinney Aff. ¶¶ 1–2.

Thus, in this case, unlike *Leonard,* the petitioner has failed in his burden to show conclusively a connection between the disputed prison disciplinary actions and future enhanced punishment. 5 Wright & Miller, Federal Practice and Procedure: Civil 2d § 1208, at 101 & n. 9, 103–04 & n. 12 (the petitioner bears the burden of demonstrating the court's subject matter jurisdiction over his or her claims). In fact, Thompson failed to offer any evidence to dispute McKinney's affidavit. This court refuses to participate in speculation or to concede without proof that returning to prison on an unrelated sentence after a disciplinary action inherently leads to enhanced punishment, when the only evidence in the record is that it would not do so. Furthermore, the record in this case does not reveal that Thompson definitely has been or will be returned to prison, as so far as the court knows, Thompson has not reentered

the prison system, and may not do so. *Cf. Leonard,* 55 F.3d at 372 (the petitioner had been discharged from prison, but "ha[d] since been returned to the custody of the Iowa Department of Corrections on a new sentence."). Thus, Thompson's circumstances are distinguishable from those of the petitioner in *Leonard.* Thompson has failed to establish his first alternative "collateral consequences," which might have breathed life into his *habeas corpus* action, on the ground of "enhanced punishment."

### 2. § 1983 claim preclusion and the collateral consequences doctrine

■ On May 4, 1993, Chief United States District Court Judge Michael J. Melloy stayed Thompson's original federal § 1983 action pending state exhaustion of the constitutional issues under the holding of the Eighth Circuit Court of Appeals in *Offet v. Solem,* 823 F.2d 1256 (8th Cir.1987). In *Offet,* the Eighth Circuit Court of Appeals sought to ameliorate federal-state comity concerns by clarifying the "'ambiguous borderland' between habeas corpus and section 1983." *Id.* at 1257–58 (quoting *McKinnis v. Mosely,* 693 F.2d 1054, 1056 (11th Cir.1982) (per curiam)). The court established the rule for this circuit by holding that, where a federal court's ruling on a prisoner's petition for a writ of *habeas corpus* or § 1983 claim might result in an earlier or immediate release, the federal district court must stay the action until the plaintiff has satisfied the exhaustion requirement with respect to the underlying constitutional issue. *Id.,* 823 F.2d 1256, 1258. By so holding, the court sought to prevent the federal system from depriving the state court system of the first opportunity to address the merits of the underlying constitutional issue. *Id.* Implicit in *Offet* was the recognition that an unsuccessful state post-conviction proceeding would collaterally estop relitigation of the same issues in the stayed § 1983 action under the full faith and credit statute, 28 U.S.C. § 1738. *Gross v. Heikien,* 957 F.2d 531, 533 (8th Cir.), *cert.*

*denied,* 506 U.S. 881, 113 S.Ct. 233, 121 L.Ed.2d 168 (1992).[13]

The Supreme Court and Eighth Circuit Court of Appeals have expressly held that prisoners who challenge disciplinary rulings that lengthen their sentence can file a *habeas corpus* action if a state tribunal does not overturn the disciplinary holding, or can file a § 1983 action directly if the disciplinary holding is overturned by the state. *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); *Sheldon v. Hundley,* 83 F.3d 231 (8th Cir.1996); 42 U.S.C. § 1983 (1988). In *Heck,* the Supreme Court wrote,

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

*Heck,* 512 U.S. at ——, 114 S.Ct. at 2372. Thompson's § 1983 impartial factfinder claim is subject to the preclusive effect of his unsuccessful state post-conviction proceeding unless a federal court grants him a writ of *habeas corpus* under the collateral consequence doctrine. *Id.*

The respondent argues that, under the Supreme Court's holding in *Heck,* Thompson's civil rights action pursuant to 42 U.S.C. § 1983 does not prevent his *habeas corpus* action from being moot because of his discharge from confinement. The respondent contends that because *Heck* states "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated," this court may

---

**13.** "Issues actually litigated in the state-court proceeding are entitled to the same preclusive effect in a subsequent federal § 1983 suit as they enjoy in the courts of the State where the judgment was rendered." *Gross v. Heikien,* 957 F.2d 531, 532 (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 83, 104 S.Ct. 892, 897, 79 L.Ed.2d 56 (1984).

recognize Thompson's action as moot without considering the possible dispositive effect on the subsequent § 1983 action. *Heck,* 512 U.S. at ——, 114 S.Ct. at 2374. In other words, the respondent asserts that Thompson's § 1983 claim, which cannot accrue until successful disposition of this *habeas corpus* action, should not breathe life into a *habeas corpus* action mooted by Thompson's discharge from custody.

The Supreme Court sought in *Heck* to clarify the law "at the intersection of *habeas* and § 1983." *Heck,* 512 U.S. at ——, 114 S.Ct. at 2378. The Court held that a § 1983 action seeking to invalidate a conviction or sentence may only be brought after a "favorable termination" of the disciplinary result in an appropriate state tribunal or federal *habeas corpus* court. *Heck,* 512 U.S. at ——, 114 S.Ct. at 2372; *Sheldon,* 83 F.3d at 233. The *Heck* Court's ruling embraced the common-law principle prohibiting use of a civil tort action to challenge the validity of an outstanding criminal conviction. *Heck,* 512 U.S. at ——, 114 S.Ct. at 2374 n. 10. This reasoning is applicable to prison administrative rulings that affect the length of a prisoner's sentence. *See Sheldon,* 83 F.3d at 233 (citing *Miller v. Dep't of Corrections,* 75 F.3d 330, 331 (7th Cir.1995) (per curiam)); *Schafer v. Moore,* 46 F.3d 43, 45 (8th Cir.1995). To avoid statute-of-limitations problems, the *Heck* Court held that a properly dismissed § 1983 action was tolled pending *habeas corpus* determination. *Heck,* 512 U.S. at ——, 114 S.Ct. at 2378–79. Thus, the Supreme Court in *Heck* and the Eighth Circuit Court of Appeals in *Offet* sought the same objective, to prevent the estoppel effect caused by the prosecution of veiled *habeas corpus* actions under 42 U.S.C. § 1983. In making these determinations, this court finds no suggestion that the Supreme Court and the Eighth Circuit Court of Appeals intended to preclude a district court from considering the dispositive effect a determination of mootness of a *habeas corpus* action would have

upon a premature § 1983 claim that has actually been filed, but which is stayed pending disposition of prerequisite state court of federal *habeas corpus* proceedings. *Cf. Sheldon,* 83 F.3d at 234 (holding that dismissal of a premature § 1983, while permissible, should be modified to be without prejudice to reassertion of the § 1983 claim after favorable termination of *habeas corpus* proceedings, thus apparently recognizing that a court must be cognizant of the effect of a *habeas* claim upon a § 1983 claim).

In addition, the respondent urges the court to read *Heck* in conjunction with *Armento-Bey v. Harper,* 68 F.3d 215 (8th Cir.1995) (per curiam), for the proposition that Thompson's civil rights action would survive independent of the § 2254 action.[14] In *Armento-Bey v. Harper,* the petitioner expressly sought relief only in the form of damages, but not restoration of good-time. In deciding the case, the Eighth Circuit used the *Heck* analysis, in turn drawn from *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), and *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), to hold that the state exhaustion and "favorable termination" requirements may not apply in the narrow situation where a prisoner limits his challenge to the procedure used in a disciplinary proceeding, but does not challenge the result. *Heck,* 512 U.S. at ——, 114 S.Ct. at 2369–70; *Armento-Bey,* 68 F.3d at 216. *But see id.* (Bowman, J., dissenting) (recognizing that "Armento-Bey's challenge to the process employed in the hearing is necessarily a challenge to the validity of the disciplinary decision itself."); *Sheldon,* 83 F.3d at 234 (recognizing that constitutional claims may be so entangled with the propriety of a disciplinary result that they necessarily imply the invalidity of the disciplinary result).

The court finds that Thompson's § 1983 challenge would not have fallen under the narrow exception recognized in *Armento-Bey.* As in *Sheldon,* the court finds that

---

**14.** For additional analysis on survival of § 1983 actions, *see Sheldon,* 83 F.3d at 232–33; *Miller,* 75 F.3d at 331 (§ 1983 action alleging that denial of good-time credits causing longer incarceration was violation of due process was procedurally barred under the holding of *Heck* ); *Gotcher*

*v. Wood,* 66 F.3d 1097 (9th Cir.1995) (prisoner was allowed to bring § 1983 action alleging denial of due process in loss of good-time credits, since the action did not bring into question prisoner's continued confinement), *petition for cert. filed,* 64 U.S.L.W. 3605 (Feb. 26, 1996).

Thompson's impartial factfinder claims "are so entangled with the propriety of the disciplinary result, which triggered the loss of good-time credits, that ruling in [Thompson's] favor on [these] grounds [in a § 1983 action] would necessarily imply the invalidity of the disciplinary result and the lengthened sentence." *Sheldon,* 83 F.3d at 234 (a first amendment claim asserted in a § 1983 action required prior favorable termination in state or federal *habeas corpus* proceedings; therefore, the court affirmed dismissal of those § 1983 claims, but modified the dismissal to permit refiling if the prisoner obtained favorable termination in other proceedings). Thompson's impartial factfinder claims in his § 1983 action are an indirect attack on both the procedure and result of the disciplinary proceedings, thus bringing those claims within the sphere of *habeas corpus. Cf. Armento–Bey,* 68 F.3d at 216. This court must be cognizant that a favorable *habeas corpus* determination breathes life into Thompson's impartial factfinder claims in his § 1983 action, which are presently estopped subject to the full faith and credit statute, 28 U.S.C. § 1738, as the result of unfavorable determination in state court. *Heck,* 512 U.S. at ——, 114 S.Ct. at 2372 (identifying these conditions for when a § 1983 claim is cognizable). Therefore, the court holds that preclusion of Thompson's impartial factfinder claims under § 1983 is, by itself, an adequate "collateral consequence" to maintain subject matter jurisdiction over the present *habeas corpus* action.

The court concludes that Thompson has shown the first of *Leonard's* grounds for holding that his *habeas corpus* action is not mooted by his discharge from prison, and this matter may therefore proceed to the merits.

## III.  CONCLUSION

The court concludes that Thompson has failed to establish "collateral consequences" to prevent the mootness of this *habeas corpus* action in the form of possible "enhanced punishment" from assertedly unconstitutional disciplinary actions. However, the court finds that, under the holding of *Leonard,* Thompson has successfully asserted collateral consequences that will be suffered should the court determine that his *habeas corpus* petition is moot. Thompson's impartial factfinder claims in his § 1983 action are dependent upon a court in a *habeas corpus* action finding that his two disciplinary convictions were unconstitutional. In light of the "collateral consequence" to Thompson's § 1983 claim if the present action is dismissed, it would be egregious to deny Thompson his day in court to argue his petition for *habeas corpus* relief on the merits. In so holding, this court observes that in their efforts to eliminate "collisions at the intersection of *habeas* and § 1983," *Heck,* 512 U.S. at ——, 114 S.Ct. at 2380, the Supreme Court did not intend to build a roadblock to justice.[15] Therefore, because of the possibility of collateral consequences independent of Thompson's underlying conviction, the court concludes Thompson's petition for a writ of *habeas corpus* is not moot. The respondent's motion to dismiss this petition as moot is **denied.**

The court therefore establishes the following briefing schedule on the merits of Thompson's petition for writ of *habeas corpus:*

1.  Petitioner shall file a brief on the merits of this action not later than January 31, 1997. Failure to comply with this order, or failure *timely* to do so, will be deemed abandonment of this action, and this matter will consequently be dismissed for want of prosecution pursuant to Rule 11 of the *Rules*

---

15. In *Heck,* Justice Scalia stated that the general principle barring collateral attacks is "a long-standing and deeply rooted feature in both the common law and our own jurisprudence—[that] is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated." *Heck,* 512 U.S. at —— & n. 10, 114 S.Ct. at 2374 & n. 10. In a similar vein, in his concurring opinion, Justice Thomas wrote, "[I]rrespective of the common law support for a general rule disfavoring collateral attacks, 'the Court lacks the authority to do any such thing [as limit § 1983 actions] absent unambiguous congressional direction where, as here, reading § 1983 to exclude claims from federal court would run counter to § 1983 history' and defeat the statute's 'purpose.'" *Heck,* 512 U.S. at ——, 114 S.Ct. at 2380 (Thomas, J, concurring) (citing *Wyatt v. Cole,* 504 U.S. 158, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992)).

*Governing Section 2254 Cases* and *Fed. R.Civ.P.* 41(b).

2. Respondent shall file a brief in response not later than February 21, 1997. Failure to comply with this deadline will be deemed waiver of resistance to the *habeas corpus* issue.

3. Petitioner shall thereafter file a reply brief, if any, in compliance with the federal and local rules of civil procedure.

**IT IS SO ORDERED.**