WOLF, J.,
dissenting.
Appellant worked as a bookkeeper for the church. There is no indication that her duties involved religious matters related to the church. Appellant’s alleged harasser served as chairman of a committee appointed by the church to oversee her hiring as well as raises and promotions. It is unclear from the record how many employees the committee supervised or whether they had any responsibilities related to supervision of the pastor or any other employee exercising religious duties.
The alleged wrongdoing of the church involved allowing the harasser to remain in a supervisory capacity over appellant even after it was made aware of his misconduct. The case of Doe v. Evans, 718 So.2d 286 (Fla. 4th DCA 1998), rev. granted, 735 So.2d 1284 (Fla.1999), relied on by the majority, involved a claim that a church had negligently supervised and retained a religious leader of the church. While questions involving the supervision or retention of clergy arguably would raise issues about excessive entanglement with religious decisions of the church, see Doe v. Malicki, 771 So.2d 545, 548-50 (Fla. 3d DCA 2000) (Schwartz, J., dissenting), the same concerns are not present in eases involving questions about the church’s supervision of lay persons making employment decisions over lay employees. There is no indication in this case that any decisions made concerning appellant’s employment relationship were made on the basis of religious considerations.
In Drevlow v. Lutheran Church, Missouri Synod, 991 F.2d 468 (8th Cir.1993), the court held that while the First Amendment barred adjudication of a minister’s claim that the church had violated its own *1288 bylaws, the First Amendment did not necessarily bar consideration by the court of the minister’s remaining claims which had been based on the church having placed false information in the minister’s personnel file and then circulating that file to other churches interested in hiring pastors. Although the court noted that “[p]ersonnel decisions are protected from civil court interference where review by civil courts would require the courts to interpret and apply religious doctrine or ecclesiastical law,” the court went on to state that “[t]he First Amendment does not shield employment decisions made by religious organizations from civil court review ... where the employment decisions do not implicate religious beliefs, procedures, or law.” Id. at 471. The court indicated that, because it was reviewing an order on a motion to dismiss, it was unclear whether “the evidence offered at trial will definitely involve the district court in an impermissible inquiry into the Synod’s bylaws or religious beliefs.” Id.
The instant case is in a similar litigation posture. In the absence of evidence that the employment decisions made here were motivated by religious considerations, the case should go forward. Sound public policy requires that religious organizations not be given blanket immunity for employment decisions relating to lay employees. I, therefore, dissent.